Andrew AYERS, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 14, 2002.

Supreme Court of Delaware.

Submitted: April 17, 2002.
Decided: July 18, 2002.

Edward C. Gill, Georgetown, Delaware, for appellant.

Kim Ayvazian, Department of Justice, Georgetown, Delaware, for appellee.

Before VEASEY, Chief Justice, BERGER and STEELE, Justices.

STEELE, Justice:

In this appeal, Appellant Andrew Ayers alleges that the Superior Court erred when it found that he had received effective assistance of counsel at his trial on charges of delivering cocaine. We conclude that the Superior Court judge acted within his discretion when he determined that Ayers offered insufficient evidence to support his claim that his trial counsel's representation descended to the level of ineffective assistance. Therefore, we affirm the judgment of the Superior Court.

On April 3, 2000 a Superior Court jury convicted Ayers on a single charge of Delivery of a Narcotic Schedule II Controlled Substance (crack cocaine). The trial judge sentenced Ayers to 30 years at Level V supervision, suspended after 15 years for diminishing levels of supervision. On direct appeal of that conviction to this Court we affirmed the judgment of the trial court.[1] In August 2001, Ayers filed a Motion for Postconviction Relief alleging ineffective assistance of counsel at trial. The Superior Court denied that motion. Ayers now appeals.

On the afternoon of November 5, 1999, Monroe Hudson of the Delaware State Police observed Andrew Ayers get into a black pick-up truck on Pinetown Road near Lewes, Delaware. After driving a short distance on Pinetown road, the truck turned behind a row of bushes that blocked Hudson's view. When the truck emerged from behind the bushes, Ayers was no longer in the truck. Shortly thereafter, the police identified the driver of the truck as Troy Abbott. Suspecting that Ayers and Abbott had conducted a drug transaction, the police sent a trooper to Abbot's residence to question him. During the ensuing interview, Abbott admitted that he had purchased a quantity of crack cocaine from Ayers for forty dollars, and Abbott surrendered the cocaine to the trooper. Based on Abbott's statements, the police arrested Ayers and charged him with one count of delivery of cocaine.

At Ayers' trial, Abbott appeared as a witness for the State and repeated his description of the drug transaction with Ayers. Abbott also testified about his addiction to crack cocaine, his appearance in drug court stemming from his arrest for possession of cocaine in this case, and the resulting treatment process he was undergoing at the time of trial. At trial, the State also introduced the testimony of Hudson and Rodney Layfield, also of the Delaware State Police. Hudson testified that he observed Ayers get into Abbott's pick-up truck and turn down the side road

---

1. *Ayers v. State,* 781 A.2d 692, 2001 WL 292610 (Del. 2001) (Veasey, C.J., order).

where a hedgerow obscured his view from Pinetown Road. A video taken from a camera in his patrol car confirmed Hudson's observations. He noted that this was a usual spot for drug transactions because of the hedgerow screen and that the activity he witnessed was consistent with a drug deal, based on his experience as a police officer. Layfield primarily testified about earlier dealings involving purchases of cocaine from Troy Abbott. In addition, he stated that, in his considerable experience with drug related arrests, he did not recall anyone convicted of a misdemeanor like the one with which Abbott was charged ever being jailed as a result.

■ Before examining the merits of any Motion for Postconviction Relief, our courts must first apply the rules governing the procedural requirements for relief set forth in Rule 61.[2] Except in exceedingly limited circumstances, the failure to meet those requirements bars any further consideration of the petitioner's claims. The trial judge found that each of the grounds Ayers cited as a basis for relief, except for his claim of ineffective assistance of trial counsel, were procedurally barred. Specifically, he determined that each of those claims was known and available to Ayers before he instituted his direct appeal. A defendant who fails to raise an issue on direct appeal is generally barred from raising it in a postconviction motion.[3] The only exception is the narrow one provided for by Rule 61(i)(5), which allows the court to consider the merit of a motion that would be otherwise barred when it presents a colorable claim that the fundamental fairness of the proceedings has been

undermined. This was not the case here. Therefore the Superior Court judge correctly examined the merits of Ayers' petition only to the extent that they supported his non-barred claim.

■ A petitioner's claim that he received ineffective assistance of counsel is measured under the test articulated by the United States Supreme Court in *Strickland v. Washington.*[4] Under this exacting test, a claimant must demonstrate not only that his counsel's errors were so grievous that they fall below an objective standard of reasonableness, but also the existence of a reasonable degree of probability that, except for his counsel's errors, the outcome of the proceeding would have been different.[5] Actions of defense counsel are entitled to a strong presumption that they were professionally reasonable.[6] In addition, the petitioner's claims must include specific allegations of prejudice as well as the facts necessary to substantiate them.[7]

Although the ineffective assistance of counsel claim was the only claim that was not procedurally barred, the Superior Court judge recognized that six of the other grounds cited, though otherwise procedurally barred, reflected Ayers' claim of ineffective assistance. The judge thus examined the merits of these claims under the *Strickland* standard. Ayers contends that each of these grounds for relief carries the implication that trial counsel's failure to object to the admission of certain evidence and argument was both unreasonable and prejudicial. More specifically, Ayers' claims that he suffered prejudice when counsel failed to object when: 1) the

2. *Younger v. State,* 580 A.2d 552, 554 (Del. 1990).

3. Super. Ct.Crim. R. 61(i)(3).

4. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

5. *Id.* at 694, 104 S.Ct. at 2068.

6. *Id.* at 689, 104 S.Ct. at 2065.

7. *Younger,* 580 A.2d at 555.

prosecutor improperly interjected his personal opinion on Ayers' guilt into his opening statement and closing argument; 2) the State failed, before trial, to identify Hudson and Layfield as expert witnesses, even though they referred to their expertise in testifying about the events surrounding Ayers' alleged drug deal; 3) Hudson testified outside of his personal knowledge when stating that a drug transaction occurred in an area obscured from his observation post; 4) the State offered extrinsic evidence of a witness' character to bolster his credibility on direct examination; 5) Layfield testified that people don't go to jail for misdemeanors; and 6) Layfield testified that Ayers was "on Operation Safe Streets."

■ In his postconviction motion, Ayers alluded to two types of improper comment made by the State. First, he contends that the prosecutor's reference to Ayers as a "drug dealer" in his opening statement was objectionable because it unfairly and prejudicially characterized the defendant. When the State's use of the term "drug dealer" is examined in context, however, we find that Ayers' claim is without merit. The prosecutor's complete statement was, "The State is alleging that Andrew Ayers, Slim as he is ironically known, is a drug dealer." We fail to see how this remark impermissibly characterized the defendant, when the State's very obligation was to prove exactly what it alleged—that the defendant indeed delivered drugs. In the context of this trial, we find no meaningful distinction between the State alleging that a defendant delivered drugs and that he was a drug dealer. Therefore, we cannot conclude that trial counsel's failure to raise

this essentially trivial objection was unreasonable under the circumstances.

■ The second set of challenged comments reflects not on Ayers' character, but on the prosecutor's individual belief in Ayers' guilt. Ayers contends that the prosecutor's remarks in his opening statement and closing argument were improper. In his opening statement, the prosecutor stated, "I believe at the end of the State's case you will see that there is clear and consistent evidence that a drug transaction took place and that Andrew Ayers...sold $40 worth of crack cocaine." While we discourage the use of the personal pronoun "I," this is not an improper expression of personal belief in guilt, but rather an expression of confidence in the conclusions that the jury will draw from the evidence. The latter is not impermissible under our law. In summation, however, the prosecutor concluded, "I'm certainly arguing for the position I believe, the State believes..." We have consistently and repeatedly held that a prosecutor is not to express his or her personal belief in the truth or falsity of any evidence, testimony, or the guilt of the defendant.[8] We agree with Ayers that this closing statement clearly violates the well-defined standards of prosecutorial conduct. Nevertheless, the failure to object to a clear violation of courtroom conduct does not necessarily mean that counsel's inaction resulted in ineffective assistance. Almost as often as we have admonished the State for improper comments like those described in this instance, we have similarly admonished the defense bar for failing to object to prosecutorial misconduct.[9] This case offers no exception and, consequently, counsel's fail-

---

8. *See, e.g., Hughes v. State,* 437 A.2d 559, 571 (Del.1981).

9. *See, e.g., Trump v. State,* 753 A.2d 963, 969–70 (Del.2000) ("Despite separate admonitions by this Court, some members of the defense bar still fail to assert timely objections to such prosecutorial conduct.")

ure to object under these circumstances may well fall below an objective standard of reasonable conduct.

 We note, however, that it is not *per se* unreasonable for defense counsel to withhold an objection, even in the face of serious prosecutorial misconduct. Because of the ultimate goal of representation is not to win an objection, but to prevail when the verdict is read, courts operate on the presumption that a challenged action was the result of a tactical decision that could be considered sound trial strategy.[10] It is not beyond comprehension to envision an instance where a surely winnable objection may still hurt the defense in the eyes of the jury. Yet, we need not decide concretely whether in this instance the conduct was unreasonable, because as discussed *supra,* this is but one prong of the *Strickland* test. Even if we were to presume that defense counsel's failure to object under these circumstances was unreasonable, Ayers has failed to meet the second prong by offering no evidence by which we could conclude that a proper objection would have likely produced a different outcome.

 On this record we are unable to reach the conclusion that there exists a reasonable probability that a timely objection to these two comments would have altered the outcome of Ayers' trial. Although clearly improper, the prosecutor commented only on Ayers' general guilt and did not lend undue credibility to any particular piece of evidence or witness' testimony. In fact, Ayers has failed to point to any evidence that the jury was likely to have considered in a different light as a result of the State's error.

Moreover, as the Superior Court noted, the totality of the unchallenged evidence, including the videotape of Abbott and Ayers, Abbott's testimony, and the testimony of several officers, suggests that the prosecutor's objectionable statement in closing was not pivotal in the jury's determination of guilt. Because Ayers cannot demonstrate sufficient prejudice to overcome the second prong of the *Strickland* test, the Superior Court correctly found that this did not contribute to the ineffective assistance of counsel.

 Ayers next argues that his counsel rendered ineffective assistance by failing to object to what he characterizes as the "expert testimony" of Hudson and Layfield, who had not been identified as expert witnesses before trial. The allegedly "expert" testimony was, in fact, that of percipient witnesses testifying about their own observations and actions. The fact that the two officers testified that they used their expertise in recognizing drug transactions simply served to place their actions in a relevant context. This is not expert testimony under our rules of evidence.[11] Because of the substantial likelihood that any objection would have been overruled, counsel's failure to object was not unreasonable. Moreover, Ayers has again failed to demonstrate that if sustained there would likely have been a different outcome.

 We now turn to Ayers' claim that his trial counsel's failure to object to Abbott's testimony as impermissible under Delaware Rule of Evidence 608 amounted to ineffective assistance of counsel. We agree with the Superior Court that Ayers

**10.** *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

**11.** *See McLain v. General Motors Corp.,* 569 A.2d 579, 584 (Del.1990) ("When a witness testifies based on their own experiences, knowledge and observation about *the facts of the case,* they are not giving 'expert testimony,' as that term is defined by the rules of evidence." (Emphasis in original)).

presents no evidence that this failure to act was unreasonable under the circumstances. Indeed, on this record, we find it unlikely that a Rule 608 objection was even proper in this instance. Rule 608 governs the use of extrinsic evidence to bolster the credibility of a witness. The evidence adduced from Abbott on direct examination concerning his drug addiction and later recovery was not extrinsic. Rather, it had a direct connection to Abbott's presence at the scene of the alleged crime. Specifically, the State introduced this evidence to develop a context for Abbott's decision to purchase drugs from Ayers and to show the consequences of that decision. In light of this, we can hardly find that trial counsel's action was unreasonable. An objection based on lack of relevance may have been appropriate, but Ayers failed to forward this argument in his Motion for Postconviction Relief or in this appeal. Once again, even if that argument had properly come before the court, Ayers offers no evidence that the objection would have been sustained or that, if it had been, the absence of the testimony in question from the available pool of evidence would have altered the jury's verdict in any manner.

■ Ayers argues that Layfield's testimony about the remoteness of the possibility that Abbott might suffer incarceration as a result of his misdemeanor charge was similarly impermissible character evidence. Presumably he is arguing that this characterization will somehow enhance his credibility with the jury. A more likely and effective objection would have been that Layfield's testimony was beyond the scope of his personal knowledge or expertise. In either case, the benefit of such an objection appears to this Court to likely have

been minimal. Thus, we presume that this was simply a valid tactical judgment by defense counsel that does not exceed the bounds of reasonable trial practice and again note the lack of evidence that the outcome of the trial would likely have been different had counsel registered an objection.

■ Ayers contends that trial counsel's failure to move for a mistrial after Layfield offered unsolicited testimony that Ayers was on Operation Safe Streets.[12] Ayers' trial counsel did move to strike the non-responsive comment immediately and the trial judge granted the motion, ordering the jury to disregard the testimony. There were no further allusions to Operation Safe Streets during the testimony. Layfield's testimony did not include any explanation of the nature of Operation Safe Streets or reasons why Ayers might have been involved with it. We have held that curative instructions are usually sufficient to remedy any prejudice that might result from the inadvertent introduction of inadmissible evidence.[13] A mistrial is only mandated where there are "no meaningful and practical alternatives" available as a remedy.[14] In this instance, trial counsel sought an alternative remedy. Any further objection, as the Superior Court judge noted in his Rule 61 decision, would have likely drawn unwarranted attention to what was, essentially, a comment that was meaningless to the jury. Again, we will defer to the presumption that this was a valid tactical decision and well within the bounds of reasonable conduct for an attorney.

■ Ayers' final two arguments are directed not toward the conduct of trial

12. Operation Safe Streets is a joint police and probation program designed to apprehend offenders who fail to comply with the terms of their probation.

13. *Zimmerman v. State,* 628 A.2d 62, 66 (Del. 1993).

14. *Dawson v. State,* 637 A.2d 57 (Del.1994).

counsel, but toward the inadequacy of his counsel on appeal. Specifically, Ayers claims that his appellate counsel should have challenged the trial judge's decision to admit testimony that "everyone knew" that drug deals occurred behind the hedgerow where the State claimed Ayers delivered drugs to Abbott as well as the judge's decision to overrule an objection at sentencing to the State's use of an earlier delivery conviction that had been inadvertently not turned over in discovery. Because Ayers failed to raise any claim of inefficiency of appellate counsel in his Motion for Postconviction Relief, that argument may not be raised before this Court.[15]

The judgment of the Superior Court is affirmed.

---

15. Supr. Ct. R. 8; *Casalvera v. State,* 410 A.2d 1369 (Del.1980).