# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE, )
)
v. )
)
CLIFFORD WRIGHT, )
) Cr. ID. No. 0801010328
Defendant. )
)
)

Submitted: November 24, 2014
Decided: February 12, 2015

Upon Defendant's Amended Motion for Postconviction Relief
**DENIED**

## OPINION

Morgan T. Zurn, Deputy Attorney General, Department of Justice, Attorney for the State.

Albert J. Roop, V, Esquire, Patrick J. Collins, Esquire, Collins & Roop, Attorneys for Defendant.

**JOHNSTON, J.**

In June of 2006, Defendant Clifford Wright ("Wright") resided with his girlfriend, Tamela Gardner ("Gardner"), at Gardner's home. Wright and Gardner had a contentious relationship. After the relationship ended on or about July 1, 2006, Wright began harassing Gardner. Wright's harassment culminated during the early hours of July 9, 2006, when Wright snuck into Gardner's home and murdered Gardner and her friend Gabriel Gabrielli ("Gabrielli") while they slept.

The exact murder weapon used by Wright is unknown. However, Gardner and Gabrielli suffered at least 8 and 11 injuries to the head, respectively, without displaying any defensive wounds. Following the murders, Wright dragged the bodies out of Gardner's home and into Gardner's van. Wright then drove the van to Tweed's Park, and set the van on fire. On July 13, 2006, the van, along with Gardner and Gabrielli's bodies, were found.

On January 22, 2008, a grand jury indicted Wright for, among other crimes, the murders of Gardner and Gabrielli. The State of Delaware ("State") requested the death penalty. Wright's jury trial began on October 5, 2009, and concluded on November 19, 2009. Wright was represented by Jerome M. Capone, Esquire and Brian J. Chapman, Esquire (collectively "Trial Counsel").

At trial, the State called two key witnesses. The first was Robert Mahan ("Mahan"), a convicted felon who shared a jail cell with Wright for five days in

2

2008 at the Howard R. Young Correctional Institute. The second was Jennie Vershvovsky, M.D. ("Dr. Vershvovsky"), the Assistant Medical Examiner for the Delaware Office of the Chief Medical Examiner.

Mahan testified that during the five days he and Wright shared a cell, they discussed Wright's background, Wright's relationship with Gardner, and eventually the murders of Gardner and Gabrielli. There were two critically important aspects of Mahan's testimony. First, Mahan testified: "[Wright] said Detective Abrams had told [Wright's] brother that the weapon used against [Gardner and Gabrielli] was a hammer and [Wright] proceeded to tell me…this wasn't the case at all…[Gardner and Gabrielli] were killed with a bat…an aluminum [baseball] bat." Second, Mahan testified that after Wright came back to their shared jail cell from a meeting with Trial Counsel, Wright appeared pale. He told Mahan: "[The State is] talking about executing me, taking my life." Mahan, in an attempt to calm Wright, told him not to worry because he did not commit the murders, to which Wright responded: "But I did."

A few days later Dr. Vershvovsky testified at trial. Dr. Vershvovsky was the forensic pathologist who conducted the autopsies of Gardner and Gabrielli. Dr. Vershvovsky testified that the cause of death for both Gardner and Gabrielli was "blunt force injury to [the] head." Dr. Vershvovsky did not opine on the specific object used to murder Gardner and Gabrielli, but did testify that: "It can be any

3

blunt object which has a smooth, circular surface." When confronted by Trial Counsel on cross-examination as to whether a baseball bat could have been the murder weapon, Dr. Vershvovsky testified that it was a possibility.

At the close of trial, the jury returned a guilty verdict for all charges.[1] Wright subsequently filed a Motion for a New Trial.

Following the guilty verdict, but before ruling on Wright's Motion for a New Trial, the Superior Court held a penalty phase hearing from November 30 to December 10, 2009. At the end of the penalty phase hearing the jury returned a verdict of 7-5 in favor of death. On March 5, 2010, this Court sentenced Wright to life in prison without parole for each conviction of first degree murder.[2]

Wright filed a timely appeal to the Delaware Supreme Court on March 31, 2010. Upon Wright's motion, the Delaware Supreme Court remanded Wright's case to the Superior Court to rule on Wright's motion for a new trial. On July 30, 2010, the Superior Court denied Wright's Motion for a New Trial.[3] Subsequently, on October 24, 2011, the Delaware Supreme Court affirmed Wright's conviction.[4]

On August 23, 2012, Wright filed a motion for appointment of counsel to pursue postconviction relief. The Superior Court granted the motion and appointed

---

[1] The jury found Wright guilty of four counts of first degree murder, five counts of possession of a deadly weapon during the commission of a felony, first degree burglary, second degree arson, noncompliance with conditions of a bond, aggravated harassment, third degree arson, and theft of a motor vehicle.
[2] *State v. Wright*, 2010 WL 746240, at *1 (Del. Super.).
[3] *State v. Wright*, 2010 WL 3005445, at *1 (Del. Super.).
[4] *Wright v. State*, 31 A.3d 77 (Del. 2011) (TABLE).

4

counsel on October 17, 2012.  On October 18, 2012, Wright filed a *pro se* Motion for Postconviction Relief ("Motion") pursuant to Superior Court Rule 61.  On August 1, 2014, Wright's appointed counsel filed an amended motion.

## DEFENDANT'S RULE 61 MOTION

Wright's Motion raises only one ground for postconviction relief: that Trial Counsel was ineffective in failing to investigate and present any evidence or testimony to rebut the testimony of the Dr. Vershvovsky and Mahan.

## STANDARD OF REVIEW

Rule 61 of the Superior Court Rules of Criminal Procedure ("Rule 61") governs motions for postconviction relief.  In reviewing motions for postconviction relief, Delaware law requires the Court to first look at Rule 61's procedural requirements before examining the motion on its merits.[5]  Rule 61(i) sets forth the possible procedural bars to post-conviction relief: (1) a motion for postconviction relief cannot be filed more than one year after the judgment of conviction is final; (2) any ground for relief not asserted in a prior postconviction motion is barred; (3) any ground for relief not asserted in the proceedings leading to the judgment of

---

[5] *Ayers v. State*, 802 A.2d 278, 281 (Del. 2002).

conviction is barred; (4) any ground for relief that was formerly adjudicated is barred.[6]

## ANALYSIS

### *Ineffective Assistance of Counsel*

Rule 61(a)(1) provides in relevant part:

This rule governs the procedure on an application by a person in custody under a sentence of this court seeking to set aside the judgment of conviction…on the ground that the court lacked jurisdiction or *any other ground that is a sufficient factual and legal basis for a collateral attack upon a criminal conviction*….(emphasis added).

Therefore, claims of ineffective assistance of counsel at trial and on direct appeal are appropriate in motions for postconviction relief.[7] Ineffective assistance of counsel claims are evaluated under the two-pronged test set forth in *Strickland v. Washington*.[8] To succeed on a claim under *Strickland*, the petitioner must show: (1) that "counsel's representation fell below an objective standard of reasonableness;" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[9]

---

[6] Super. Ct. Crim. R. 61(i).
[7] *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990).
[8] 466 U.S. 668 (1984). *See also Ayers*, 802 A.2d at 281 ("A petitioner's claim that he received ineffective assistance of counsel is measured under the test articulated by the United States Supreme Court in *Strickland v. Washington*.").
[9] *Strickland*, 466 U.S. at 688, 694. S*ee also Flamer*, 585 A.2d at 753.

The test articulated in *Strickland* creates a strong presumption that counsel's representation was professionally reasonable.[10]  The "benchmark for judging any claim of ineffectiveness [is to] be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[11]  Therefore, a motion for postconviction relief "must make concrete allegations of actual prejudice, and substantiate them," or risk being dismissed.[12]

### *Parties' Contentions*

Wright contends that Trial Counsel was ineffective because their failure to investigate and present any evidence or testimony to rebut the testimony of Mahan and Dr. Vershvovsky prejudiced Wright.  Specifically, Wright asserts that Trial Counsel should have consulted with an expert in forensic pathology to aid in the cross-examination of Dr. Vershvovsky and to rebut Mahan's testimony concerning the alleged murder weapon.  Wright argues that if a forensic pathologist could have ruled out the possibility that a baseball bat was used to murder Gardner and Gabrielli it would have effectively rebutted Mahan's testimony.

Conversely, the State argues that Trial Counsel's failure to hire a forensic pathologist was not objectively unreasonable.  The State also argues that Wright

---

[10] *Flamer*, 585 A.2d at 753.
[11] *Cooke v. State*, 977 A.2d 803, 840 (Del. 2009) (quoting *Strickland*, 466 U.S. at 688).
[12] *Couch v. State*, 2008 WL 390754, at *1 (Del.).

cannot show there is a reasonable probability that, but for Trial Counsel's failure to hire a forensic pathologist expert the result of trial would have been different. The State asserts that a forensic pathologist's rebuttal opinion on the murder weapon would not have impeached Mahan's testimony. The State argues that the purpose of Mahan's testimony was to show that Wright had told Mahan the police's theory about the murder weapon—information that Mahan only could have received from Wright. The State asserts it used the murder weapon testimony to support Mahan's credibility, not as proof of the actual murder weapon used in the murders.

*Discussion*

The Court initially will address Wright's motion with respect to Rule 61's procedural requirements. The Court first finds that Wright's motion was filed timely under Rule 61(i)(1). Wright filed this motion on October 18, 2012, which was within one-year from the Delaware Supreme Court's affirmation of Wright's conviction on October 24, 2011. Second, the Court finds that Rule 61(i)(2) is satisfied because this is Wright's first-filed motion for postconviction relief. Third, the Court finds that Rule 61(i)(3) is satisfied because Wright's ineffective assistance claim has not been previously raised. A claim of ineffective assistance is only proper in a motion for postconviction relief.[13] Finally, Rule 61(i)(4) is

---

[13] *Flamer*, 585 A.2d at 753.

satisfied because this is the first time Wright has raised an ineffective assistance of counsel claim. Thus, Wright's claim has not been previously adjudicated.

Turning to the merits of Wright's motion, Wright argues that Trial Counsel were ineffective because they did not solicit advice or testimony from a forensic pathologist. Wright contends:

> Trial counsel's failure in this regard was significant. Mr. Wright needed a forensic pathologist to review Dr. Vershvovsky's findings and to rebut Mahan's claim that a bat had been used to murder Ms. Gardner and Mr. Gabrielli. Had trial counsel's expert ruled out the possibility that a bat was used, as Vershvovsky would not, it would have established that Mahan – a man in an unenviable situation given his condition at the time – lied. A lie would have called into question the remainder of Mahan's testimony, which was already questionable.
>
> A forensic pathologist ruling out a bat would have provided meaningful rebuttal to the State's arguments regarding Mr. Wright's supposed admissions to Mahan. Instead, trial counsel failed to hire an expert and as a result was ineffective. Trial counsel was totally unprepared to confront Mahan's statement. It missed out on the opportunity to rule out the use of a bat due to the diameter of the injuries and to discuss the amount of force necessary to use the handle of a bat to cause the injuries in this case, as the State suggested was possible on re-direct. The mechanics of swinging a hammer differ greatly from poking someone with the handle of a baseball bat, and thus the force generated will vary. Either way, trial counsel's mistake allowed the State to tie its circumstantial case together with a "confession," and therefore prejudiced Mr. Wright.

Assuming *arguendo* that a forensic pathologist would have testified that a baseball bat could not have been the murder weapon, Wright has failed to show that the testimony of a forensic pathologist would have changed the outcome of the

9

trial. With regard to Mahan's testimony, the identity of the actual murder weapon is irrelevant. The only pertinent information was what had been conveyed to Wright, by Trial Counsel, about their impression of what the State *believed* about the murder weapon. At the time Wright and Mahan were incarcerated together, the State's investigator believed that the murder weapon was a hammer. That belief was provided to Trial Counsel, who in turn conveyed the hammer theory to Wright. Wright subsequently told Mahan what the State believed.

The only purpose of forensic rebuttal expert testimony would be to rule out a bat as the actual murder weapon. Having such testimony would not serve to discredit Mahan. Mahan's statement went to the conveyed ***belief*** of the State's investigator, not to the ***accuracy*** of that belief. The Court finds the State's purpose for eliciting Mahan's testimony regarding the weapon—that Wright had told Mahan the police were incorrect about the murder weapon—was to buttress Mahan's credibility as to the other statements made by Wright.

In short, the State did not use Mahan's testimony to pursue a theory that the murder weapon was a baseball bat. A forensic pathologist's opinion that a baseball bat could not have been the murder weapon would not have changed the fact that Mahan knew intimate details of the murder investigation, which were not readily known to the public. Nor would it change the fact that Wright confessed the murder to Mahan in their shared jail cell.

10

Wright also suggests that "Mahan was a drug-addicted inmate serving time for a felony DUI and suffering immense pain from esophageal cancer. He admitted that he was withdrawing from his narcotic medications and could not sleep at the time he met Mr. Wright. He was ripe for impeachment." However, the Court finds that Trial Counsel did attempt to impeach Mahan's credibility based on those same factors. Trial Counsel confronted Mahan several times about the physical and mental symptoms he was experiencing during his narcotic withdrawal. Trial Counsel also questioned Mahan about the circumstances surrounding how Mahan came to know about the police's thoughts as to the murder weapon.

Similarly, a forensic pathologist's opinion would not necessarily undermine Dr. Vershvovsky's opinion. Dr. Vershvovsky did not opine that a baseball bat was the actual weapon used to murder Gardner and Gabrielli. Instead, Dr. Vershvovsky opined that Gardner and Gabrielli were killed because of "blunt force injuries" that could have been caused by "any blunt object which has a smooth, circular surface." Only when confronted by Trial Counsel with hypothetical questions on cross-examination did Dr. Vershvovsky state that it was possible that the murder weapon could be a baseball bat. Therefore, a defense forensic pathologist ruling out a baseball bat as the murder weapon may have eliminated the potential for a baseball bat to be the murder weapon, but it would not have changed

Dr. Vershvovsky's opinion that the murder weapon was a blunt object with a smooth, circular face.

## CONCLUSION

The Court finds that Wright is unable to establish a claim for ineffective assistance of counsel under *Strickland*. Wright has failed to show that: (1) Trial Counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for Trial Counsel's unprofessional errors, the result of the proceeding would have been different.

**THEREFORE**, Defendant Clifford Wright's Amended Motion for Postconviction relief is hereby **DENIED**.

**IT IS SO ORDERED**.

/s/__*Mary M. Johnston*_____
The Honorable Mary M. Johnston