# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| | ) | Def. I.D. # 2108001587A |
| v. | ) | |
| | ) | |
| | ) | |
| RHANDY D. MASSEY, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: December 4, 2025
Decided: January 15, 2026

*Upon Defendant's Motion for Postconviction Relief under Superior Court Criminal Rule 61 (R1)*

**DENIED**

## MEMORANDUM OPINION AND ORDER

Rebecca E. Anderson, Esquire, Deputy Attorney General, Department of Justice, 13 The Circle, Georgetown, DE 19947; Attorney for State of Delaware.

Rhandy D. Massey, SBI #00583561, Sussex Correctional Institution, P.O. Box 500, Georgetown, DE 19947; *Pro Se*.

**KARSNITZ, R. J.**

## I.      BACKGROUND

Rhandy D. Massey ("Defendant") was charged with multiple criminal offenses stemming from allegations made by his two minor daughters, M.M. and L.M., of sexual abuse.

On Friday, January 20, 2023, Defendant submitted a motion pursuant to 11 *Del. C*. § 3508 (Delaware's Rape Shield Statute), requesting an *in camera* hearing to determine the admissibility of prior sexual conduct pertaining to L.M. and M.M. The State filed its response via email on Sunday, January 22, 2023. I addressed the motion on Monday, January 23, 2023, in a pre-trial hearing before jury selection began. After full briefing and oral argument by both parties, I denied the motion.

On Monday afternoon, January 23, 2023, I held a teleconference with Trial Counsel and the prosecutor to discuss the admission of evidence about Defendant's use of cocaine in front of his elder daughter, L.M. (she called the drug "root beer"). This evidence related to the charge of Endangering the Welfare of a Child. After discussion, counsel agreed that the evidence was only tangentially related to the sexual abuse charges and its admission would be unduly prejudicial to Defendant under D.R.E. Rule 404(b). I severed the Endangering the Welfare of a Child charge from the rest of the charges, and the indictment was amended to omit that charge, so the

2

cocaine use evidence did not come into the trial of the sexual abuse charges.

At the conclusion of a week-long jury trial, on January 27, 2023, Defendant was convicted of all remaining charges.

On February 6, 2023, Defendant filed a motion requesting a new trial pursuant to Delaware Superior Court Criminal Rule 33. In support of the Motion, Defendant argued, *inter alia*, that I used an incorrect legal standard in denying Defendant's request for an *in camera* proceeding under 11 *Del. C.* § 3508. I denied this motion on March 7, 2023.

On March 27, 2023, I sentenced Defendant to 119 years of incarceration at Level V.

Defendant timely appealed his convictions to the Delaware Supreme Court. At the State's request, on November 9, 2023, the Supreme Court remanded the case to me to supplement the record and make additional findings relating to the admissibility of evidence under the Rape Shield Statute.

On February 21, 2024, I held an evidentiary hearing. After extended briefing and oral argument, during which Defendant again requested a new trial, on July 17, 2024, I confirmed my prior decision to bar certain evidence to attack the daughters' credibility and returned the case to the Supreme Court. On September 4, 2025, the Supreme Court held, *inter alia*, that I had applied the correct legal standard when I ruled that Defendant could not use at trial his children's prior sexual abuse

allegations against their cousin and half-brother and affirmed his convictions.

On December 4, 2025, Defendant timely filed his first *pro se* Motion for Postconviction Relief under Superior Court Criminal Rule 61 (the "Motion"). In the Motion, Defendant raises eight claims of ineffective assistance of his trial counsel ("Trial Counsel") and one claim of prosecutorial misconduct.

In his Motion, Defendant did not request the appointment of Postconviction Counsel to represent him. Rule 61(e)(1) provides in pertinent part:

> Any indigent movant's request for appointment of counsel shall be filed contemporaneously with the movant's postconviction motion. Failure to file a contemporaneous request for appointment of counsel with the movant's postconviction motion may be deemed a waiver of counsel.

I deem Defendant's failure to file such a contemporaneous request to constitute a waiver of the appointment of postconviction counsel to represent him, and I do not do so.

## II.   ANALYSIS

I first address the four procedural bars of Rule 61.[1]  If a procedural bar exists, as a general rule I will not address the merits of the postconviction claim.[2]  A Rule 61 Motion can be barred for time limitations, successive motions, failure to raise

---

[1] *Ayers v. State*, 802 A.2d 278, 281 (Del.2002) (citing *Younger v. State,* 580 A.2d 552, 554 (Del. 1990).

[2] *Bradley v. State*, 135 A.3d 748 (Del 2016); *State v. Page*, 2009 WL 1141738, at*13 (Del. Super. April 28, 2009).

claims below, or former adjudication.[3]

First, a motion for postconviction relief exceeds time limitations if it is filed more than one year after the judgment of conviction is final.[4] In Defendant's case, the judgment of conviction became final when the Supreme Court issued its mandate or order finally determining the case on direct review.[5] The Supreme Court issued its mandate finally determining Defendant's case on direct review on September 4, 2025. Defendant filed the Motion on December 4, 2025, well before the one-year deadline. Therefore, consideration of the Motion is not barred by the one-year limitation.

Second, second or subsequent motions for postconviction relief are not permitted unless certain conditions are satisfied.[6] Since this is Defendant's first motion for postconviction relief, consideration of the Motion is not barred by this provision.

Third, grounds for relief "not asserted in the proceedings leading to the judgment of conviction" are barred unless certain conditions are satisfied.[7] It could be argued that Defendant's claims could have been asserted in the proceedings leading to his conviction and are therefore barred. However, Defendant's grounds

---

[3] Super. Ct. Crim. R. 61(i).
[4] Super. Ct. Crim. R. 61(i)(1).
[5] Super. Ct. Crim. R. 61(m)(2).
[6] Super. Ct. Crim. R. 61(i)(2).
[7] Super. Ct. Crim. R. 61(i)(3).

for relief are couched as claims of ineffective assistance of counsel and I will treat them as such. It is well-settled Delaware law that, as collateral claims, ineffective assistance of counsel claims are properly raised for the first time in postconviction proceedings.[8] Therefore, my consideration of the Motion is not barred by this provision.

Fourth, grounds for relief formerly adjudicated in the case, including "proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal *habeas corpus* hearing" are barred. Defendant's claims have not been formerly adjudicated. My consideration of the Motion is not barred by this provision.

None of these four procedural bars apply either to (i) a claim that there is new evidence of actual innocence in fact, or to (ii) a claim that a retroactively applied rule of constitutional law renders the conviction invalid.[9] Defendant makes no such claims here.

Since none of the procedural bars under Rule 61 apply, I will consider the Motion on its merits.

To succeed on the merits, Defendant must meet the two-part standard

---

[8] *State v. Schofield*, 2019 WL 103862, at *2 (Del. Super. January 3, 2019); *Thelemarque v. State*, 2016 WL 556631, at *3 (Del. Feb. 11, 2016) ("[T]his Court will not review claims of ineffective assistance of counsel for the first time on direct appeal."); *Watson v. State*, 2013 WL 5745708, at *2 (Del. Oct. 21, 2013) ("It is well-settled that this Court will not consider a claim of ineffective assistance that is raised for the first time in a direct appeal.").
[9] Super. Ct. Crim. R. 61(d)(2)(i) and (ii).

established in *Strickland v. Washington,* [10] as applied in Delaware. [11] Under *Strickland*, Defendant must show that Trial Counsel's representation "fell below an objective standard of reasonableness" (the "performance prong"); and (2) the "deficient performance prejudiced [his] defense." (the "prejudice prong").[12]

As to the performance prong, Defendant must demonstrate that Trial Counsel's decisions were unreasonable. There is a presumption that Trial Counsel's challenged conduct may be considered a strategic choice, and there is deference afforded to such strategy.[13]

As to the prejudice prong, Defendant must demonstrate that there exists a reasonable probability that, but for Trial Counsel's errors, the outcome of the trial would have been different. [14] Even if Trial Counsel's performance was professionally unreasonable, it would not warrant setting aside the judgment of conviction if the error had no effect on the judgment.[15] A showing of prejudice "requires more than a showing of theoretical possibility that the outcome was affected."[16]

*Strickland* teaches that there is no reason for a court deciding an ineffective

---

[10]  466 U.S. 668 (1984).
[11]  *Albury v. State*, 551 A.2d 53 (Del. 1988).
[12]  *Strickland* at 687.
[13]  *Id.* at 689.
[14]  *Albury,* at 687; *Zebroski v. State,* 822 A.2d 1038, 1043 (Del. 2003); *Wright v. State,* 671 A.2d 1353, 1356 (Del. 1996).
[15]  *Strickland,* at 691.
[16]  *Frey v. Fulcomer,* 974 F.2d 348, 358 (3d Cir. 1992).

assistance claim to approach the inquiry in a particular order, or even to address both prongs of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant because of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed.[17] In every case, the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.[18]

**Nine Grounds for Relief**

**Ineffective Assistance of Counsel (8)**

Defendant asserts eight ineffective assistance of counsel claims. He asserts that Trial Counsel failed to:

(1) fully investigate the alleged forgery of his signature on private and government documents by his ex-wife in order to defraud him, evidence of which would have impeached her credibility;

(2) object to a jury instruction that he fled from the police, when in fact he had been advised by counsel not to go to the police station until he retained a

---

[17] *Strickland,* at 697.
[18] *Id*. at 696.

lawyer;

(3) present evidence that his cocaine use gave rise to his paranoia, thereby leaving the false impression in the minds of the jurors that his paranoia was instead due to his guilt;

(4) point out to the jury that the victims' testimony at trial was inconsistent with their statements at their interview at the Children's Advocacy Center ("CAC");

(5) object to the State's claim that Defendant was muddy when he was apprehended, when in fact Department of Corrections ("DOC") records do not indicate that his clothes were muddy, and they are still in the DOC bag;

(6) object to the detective's false testimony that Defendant apologized for fleeing from police;

(7) investigate what kind of "deal" a co-worker and witness, Sidney Marvel, got from the State of Maryland for testifying in the case; and,

(8) retain an expert to counterbalance the testimony of the CAC witness, since CAC is State-funded and therefore only testifies in favor of the State.

**Prosecutorial Misconduct (1)**

Defendant also asserts one claim of prosecutorial misconduct:

(9) The prosecutor directed the detective not only to omit references to Defendant's cocaine habit but also to omit unspecified "other relevant

material."

Several of Defendant's claims are related, and I will discuss those claims together.

**Flight from Police -- Claims (2) and (6)**

Twelve days elapsed from the offenses until the apprehension of Defendant. In sidebars at trial, Trial Counsel stated that Defendant had been advised by a previous lawyer (whom he consulted before he retained Trial Counsel) not to speak with police until he had retained counsel. When Defendant was apprehended, he declined an interview with the police and asked for counsel. Upon apprehension, the detective took a DNA swab from Defendant but asked him no questions. During the processing of the swab, and without any prompting from the detective, Defendant made the spontaneous utterance "I'm sorry for running." During the detective's testimony, there was a sidebar during which the prosector stated that she wanted to be very careful about eliciting this testimony since Defendant had already invoked his rights, and that the testimony went only to flight and the proposed flight jury instruction. Trial Counsel stated "if it's a spontaneous utterance … I can't object to it," and in he did not object during direct examination of the detective.

I presented the following limiting instruction to the jury:

> In this case, the State contends that the defendant evaded arrest and took flight after committing the charged offenses. Evidence of evasion of arrest and flight is admissible in a criminal case as a circumstance tending to show consciousness of guilt or defendant's identity as the person who committed the offenses.

10

You may consider this evidence for this limited purpose only. You may not consider evidence of evasion of arrest or flight as proof that the defendant is a bad person and therefore probably committed the offenses. You may use this evidence only to help you decide whether the defendant was the person who committed the charged offenses.

The evidence of evasion of arrest or flight, if proved, may be considered by you in light of all other facts proved. Whether or not such evidence shows consciousness of guilt or identity, and the significance attached to such evidence, are matters solely for your determination.

As is customary, there was fulsome discussion of the jury instructions by counsel. Trial Counsel did not object to the foregoing instruction.

Defendant complains about Trial Counsel's decision not to object to the spontaneous utterance and states that the detective lied about the spontaneous utterance. As a seasoned criminal attorney, Trial Counsel is fully aware of the rules of evidence, and I will not second guess his professional judgment. It was a perfectly reasonable (and legally correct) decision on his part, and certainly not below any objective standard of reasonableness. As to the credibility of the detective's testimony, that was a factual matter for the jury to consider along with all other evidence, and I will not disturb it.

Even if Trial Counsel's judgment were unreasonable, there is such an abundance of other evidence of Defendant's guilt on the charges of which Defendant was convicted that the outcome of the trial would have been no different.

**Defendant's Cocaine Use – Claims (3) and (9)**

Somewhat counterintuitively, Defendant asserts that this cocaine use should have been presented to the jury so that it could be perceived as the cause of his paranoia, rather than guilt. Both Trial Counsel and the prosector took pains to *exclude* such evidence. Indeed, as discussed above, I held a teleconference with Trial Counsel and the prosecutor to discuss the admission of evidence about Defendant's use of cocaine in front of his elder daughter, L.M. (she called the drug "root beer"). This evidence related to the charge of Endangering the Welfare of a Child. After discussion, counsel agreed that the evidence was only tangentially related to the sexual abuse charges and its admission would be unduly prejudicial to Defendant under Rule 404(b). I severed the Endangering the Welfare of a Child charge from the rest of the charges, and the indictment was amended to omit that charge, so the cocaine use evidence did not come into the trial of the sexual abuse charges.

As seasoned criminal attorneys, Trial Counsel and the prosector are fully aware of the rules of evidence regarding relevance and prejudicial evidence, and I will not second guess their professional judgment. It was a perfectly reasonable (and legally correct) decision on their part, and certainly not below any objective standard of reasonableness. Obviously, I agreed, since I severed the charge related to cocaine use (Endangering the Welfare of a Child).

Even if Trial Counsel's and the prosector's judgment were unreasonable, there

is such an abundance of other evidence of Defendant's guilt on the charges of which Defendant was convicted that the outcome of the trial would have been no different.

**CAC Evidence – Claims (4) and (8)**

Defendant faults Trial Counsel for failure to point out the inconsistency of the testimony of the two victims at trial with their statements at CAC. He also asserts that, since CAC is funded by the State, it is biased in favor of the State and therefore Trial Counsel should have retained an expert to present counterbalancing testimony.

With respect to the inconsistent testimony of the two victims, they are young children, and a significant time had elapsed between the CAC interview and the trial. The jury heard both the CAC interview and the girls' trial testimony and were free to believe any of their trial testimony or CAC statements in whole or in part, including any inconsistencies therein. Trial Counsel may have strategically decided not to appear to be "piling on" the victims, and I will not second guess this strategic decision. In any event, Trial Counsel's conduct was not below any objective standard of reasonableness.

Even if Trial Counsel's conduct were unreasonable, there is such an abundance of other evidence of Defendant's guilt on the charges of which Defendant was convicted that the outcome of the trial would have been no different.

**Forgery of Documents by Ex-Wife – Claim (1)**

Around the time of the offenses, Defendant sold a piece of real estate which

was in his name only and received a significant amount of money. In fact, settlement on the sale occurred the day after the offenses. At trial, Defendant presented evidence that his ex-wife had forged his name on documents so that the proceeds would be deposited into their joint bank account, to which she had access, when he had requested that a check be given to him in his name only. Trial Counsel argued that this suggested that his ex-wife had the financial motivation to get their daughters to testify against him so that only she – and they -- could profit from the transaction.

Documents and testimony were introduced into evidence regarding these events and Trial Counsel argued his position to the jurors. They were free to judge the ex-wife's credibility on this issue and accept or reject this evidence in whole or in part. Nonetheless Defendant faults Trial Counsel for not "fully investigating" the alleged forgery. In my view, Trial Counsel acquitted himself reasonably on this front. He presented both documentary evidence and fully examined and cross-examined both Defendant and his ex-wife about the matter. It was not necessary to call bank employees, settlement agents, or present other evidence to make his point. In any event, Trial Counsel's conduct was not below any objective standard of reasonableness.

Even if Trial Counsel's conduct were unreasonable, there is such an abundance of other evidence of Defendant's guilt on the charges of which Defendant was convicted that the outcome of the trial would have been no different.

**Muddy Clothes – Claim (5)**

When Defendant was apprehended, a neighbor (Sidney Marvel) testified that Defendant had entered Marvel's home and was wet, partially clothed, muddy, and disheveled, because he had been in the Nanticoke River behind Marvel's home. Marvel called the police and Marvel's son chased Defendant down the road, where he was finally apprehended after having been on the run. Defendant now objects to the State's claim that Defendant was muddy when he was apprehended, when in fact Department of Corrections ("DOC") records do not indicate that his clothes were muddy, and they are still in the bag from DOC.

Testimony at trial indicated that Defendant was muddy when he was apprehended. The jurors were free to judge the credibility of Marvel and others on this issue and accept or reject this testimony in whole or in part. I am certainly not going to second guess the jury on this fact. Defendant faults Trial Counsel for not presenting rebuttal evidence that DOC records do not indicate that his clothes were muddy, and that they were still in the DOC bag. However, in my view, Trial Counsel's conduct was not below any objective standard of reasonableness.

Even if Trial Counsel's conduct were unreasonable, there is such an abundance of other evidence of Defendant's guilt on the charges of which Defendant was convicted that the outcome of the trial would have been no different.

15

**Credibility of Witness Sidney Marvel – Claim 7**

Sidney Marvel, a fact witness for the State, worked with Defendant at a trash collection company. When Defendant was on the run, he asked Marvel if he could stay with him. He did so for one night. Late the next night, he appeared in Marvel's home wet, partially clothed, muddy, and disheveled, because he had been in the Nanticoke River behind Marvel's home. Marvel called the police and Marvel's son chased Defendant down the road, where he was finally apprehended. After direct examination, Trial Counsel did not cross-examine Marvel.

In the Motion, Defendant does not fault Trial Counsel for his conduct at trial with respect to this claim, including his lack of cross-examination of Marvel. Rather, he asserts that Trial Counsel should have conducted an investigation of what kind of "deal" Marvel got from the "Maryland DOJ" for testifying against Defendant after Defendant was apprehended. Defendant offers not one scintilla of evidence that there was any such deal or, if so, what the deal was. I will not accept a conclusory and self-serving statement in lieu of articulated facts. In any event, Trial Counsel's conduct was not below any objective standard of reasonableness.

Even if Trial Counsel's conduct were unreasonable, there is such an abundance of other evidence of Defendant's guilt on the charges of which Defendant was convicted that the outcome of the trial would have been no different.

## III. CONCLUSION

For the foregoing reasons, Defendant Rhandy Massey's Motion for Postconviction Relief is summarily[19] **DENIED**.

**IT IS SO ORDERED**.

_____
/s/ Craig A. Karsnitz

cc: Prothonotary
John R. Garey, Esquire, 48 The Green, Dover, DE 19901

---

[19] Under Super. Ct. Crim. R. 61(d)(5).