# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,     )
     )
     )
     )
v.     )     **ID No. 1702005504**
     )
     )     **Cr. A. Nos. IN17-02-0859,**
TIMOTHY J. ADKINS,     )     **-0661, -0863, -0867.**
     )
     Defendant.     )

Submitted: April 8, 2019
Decided: July 16, 2019

## ORDER DENYING MOTION FOR POSTCONVICTION RELIEF

This 16th day of July, 2019, upon consideration of Timothy J. Adkins' *Pro Se* Motion for Postconviction Relief (D.I. 32); the State's Response thereto (D.I. 45); Attorney Natalie S. Woloshin's Affidavit (D.I. 43); Adkins' Supplement to his Motion (D.I. 42) and the record in this matter, it appears to the Court that:

(1) On April 11, 2017, a grand jury indicted Timothy J. Adkins for two counts of Drug Dealing (marijuana and cocaine), two counts of Aggravated Possession (marijuana and cocaine), Conspiracy Second Degree, two counts of Possession of a Firearm During the Commission of a Felony ("PFDCF"), two counts of Possession of a Firearm by a Person Prohibited ("PFBPP"), Possession of

Ammunition by a Person Prohibited ("PABPP"), Receiving a Stolen Firearm, and Possession of Drug Paraphernalia.[1]

(2)     The charges arose from a year-long investigation of Atkins and his co-defendants, Darnell Martin and Keith Mason, for transporting large quantities of marijuana across the country and selling drugs in and around Wilmington. The investigation led to the execution of a search warrant at 712 Dora Moors Lane in New Castle. Police found Adkins in the home's basement. Also found there were 247 grams of cocaine, four large duffle bags containing 21½ kilos of marijuana, a money ledger, a money counter, a digital scale, drug packaging materials, and a firearm. In Atkins' car outside the home, detectives found another kilo of marijuana. Atkins admitted to the police that the drugs and gun were his.[2]

(3)     In November of 2017, Adkins pleaded guilty to Drug Dealing-Marijuana, Conspiracy Second Degree, Drug Dealing-Cocaine, and PFBPP.[3] The State agreed to seek application of Adkins' statutory habitual criminal status to only one of the charges.[4]

---

[1]     Indictment, *State v. Timothy J. Adkins*, ID No. 1702005504 (Del. Super. Ct. Apr. 17, 2017) (D.I. 5).

[2]     *See* State's Resp., at 1-5; Def. Counsel's Aff., at ¶ 6.

[3]     Plea Agreement and TIS Guilty Plea Form, *State v. Timothy J. Adkins*, ID No. 1702005504 (Del. Super. Ct. Nov. 6, 2017) (D.I. 22).

[4]     *Id.*

(4)     Adkins was sentenced almost a month later to: (a) ten years at Level V for the PFBPP charge; (b) six months at Level V (to be served under the provisions of the Habitual Criminal Act) for the cocaine dealing charge; (c) 25 years at Level V, suspended after two years for 23 years at Level IV (Work Release), suspended after six months for 18 months at Level III, for the marijuana dealing charge; and (d) two years at Level V, suspended for one year of Level III probation for the second degree conspiracy count.[5] He filed no direct appeal from his conviction or sentence.

(5)     Adkins has now filed the instant timely motion for postconviction relief under Superior Court Criminal Rule 61.

(6)     When considering applications for postconviction relief under its criminal rules, this Court addresses any applicable procedural bars before turning to the merits.[6] This policy protects the integrity of the Court's rules and the finality of its judgments. Addressing the merits of a case that does not meet procedural requirements effectively renders our procedural rules meaningless.[7]

---

[5]     Sentencing Order, *State v. Timothy J. Adkins*, ID No. 1702005504 (Del. Super. Ct. Dec. 1, 2017) (D.I. 29) (hereinafter "Sentencing Order").

[6]     *See, e.g., Ayers v. State*, 802 A.2d 278, 281 (Del. 2002). *See also Bailey v. State*, 588 A.2d 1121, 1127 (Del. 1991); *Younger v. State*, 580 A.2d 552, 554 (Del. 1990) (citing *Harris v. Reed*, 489 U.S. 255 (1989)).

[7]     *See State v. Chao*, 2006 WL 2788180, at *5 (Del. Super. Ct. Sept. 25, 2006) ("To protect the integrity of the procedural rules, the Court should not consider the merits of a postconviction claim where a procedural bar exists."); *State v. Jones*, 2002 WL 31028584, at *2 (Del. Super. Ct. Sept. 10, 2002) (citing *State v. Gattis*, 1995 WL 790961, at *3 (Del. Super. Ct. Dec. 28, 1995)) (same).

(7) Rule 61 sets forth procedural bars to postconviction claims, including that "[a]ny ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows . . . [c]ause for relief from the procedural default and . . . [p]rejudice from violation of the movant's rights."[8] Adkins' failure to raise his third and fourth claims—i.e., his claim that the Court erred in accepting his plea and his "*Brady* violation"/prosecutorial misconduct complaint—either in this Court or on direct appeal prevents the Court from addressing them now unless Adkins shows cause for relief and prejudice from a violation of his rights. Adkins has demonstrated neither the requisite cause for relief nor prejudice. And so, these claims are barred Rule 61(i)(3).[9]

(8) Rule 61(i)(3)'s bar is inapplicable to "claims [of] ineffective assistance of counsel, which could not have been raised in any direct appeal."[10] So the Court now considers those claims on their merits.

(9) Adkins suggests in his motion that his trial/plea counsel, Natalie S.

---

[8] SUPER. CT. CRIM. R. 61(i)(3) (2017).

[9] These conclusory arguments, however, are also intertwined with Adkins' complaints attacking counsel and are effectively disposed of via the Court's discussion of those ineffectiveness claims.

[10] *State v. Smith*, 2017 WL 2930930, at *1 (Del. Super. Ct. July 7, 2017).

Woloshin, Esquire, provided ineffective assistance of counsel because she allegedly:

> (a)    failed to file either the "proper" pre-trial motions or other motions Adkins wanted her to file; and
>
> (b)    coerced Adkins into accepting a guilty plea.[11]

(10)    The Court entered an order to expand the record to include "any materials that respond to the specific [ineffective assistance of counsel] allegation relating to Woloshin's representation [of Adkins]."[12]    On that same day, the Court denied Adkins' request for appointment of counsel to pursue his Rule 61 motion.[13]

(11)    An inmate who claims ineffective assistance of counsel must demonstrate that: (a) his defense counsel's representation fell below an objective standard of reasonableness, and (b) there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different.[14]    When addressing the prejudice prong of the ineffective assistance of counsel test in the context of a challenged guilty plea, a defendant must show "that there is a reasonable

---

[11]    Def.'s Rule 61 Mot., at 3-4.

[12]    Order to Expand Record and Denying Appointment of Counsel, *State v. Timothy J. Adkins*, ID No. 1702005504 (Del. Super. Ct. June 4, 20186) (D.I. 36 & 41).

[13]    *Id.* (Adkins failed to demonstrate "that his is a substantial IAC claim . . . [n]or has he adequately pled any specific exceptional circumstances warranting the appointment of counsel").

[14]    *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *see also Alston v. State*, 2015 WL 5297709, at *3 (Del. Sept. 4, 2015).

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[15]

(12) There is always a strong presumption that counsel's representation was reasonable,[16] and "[i]t is not this Court's function to second-guess reasonable [ ] tactics" engaged by trial or plea counsel.[17] Too, one claiming ineffective assistance "must make specific allegations of how defense counsel's conduct actually prejudiced the proceedings, rather than mere allegations of ineffectiveness."[18] And an inmate must satisfy the proof requirements of both prongs—deficient attorney performance and resulting prejudice—to succeed in making an ineffective assistance of counsel claim. Failure to do so on either prong will doom the claim, and the Court need not address the other.[19]

---

[15] *See Albury v. State*, 551 A.2d 53, 59 (1988); *Sartin v. State*, 2014 WL 5392047, at *2 (Del. Oct. 21, 2014) (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)); *State v. Hackett*, 2005 WL 3060976, at *3 (Del. Super. Ct. Nov. 15, 2005).

[16] *See Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

[17] *State v. Drummond*, 2002 WL 524283, at *1 (Del. Super. Ct. Apr. 1, 2002).

[18] *Alston*, 2015 WL 5297709, at *3 (citing *Wright*, 671 A.2d at 1356); *Monroe v. State*, 2015 WL 1407856, at *5 (Del. Mar. 25, 2015) (citing *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996)).

[19] *Strickland*, 466 U.S. at 697; *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013) ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant."); *State v. Hamby*, 2005 WL 914462, at *2 (Del. Super. Ct. Mar. 14, 2005).

-6-

(13) First, Adkins' claim that Woloshin failed to explore potential defenses and suppression claims is belied by the record. Adkins says Woloshin "was ineffective by not filing the proper pretrial motions" and failed to "prepar[e] effectively for [him] to go to trial."[20] Adkins provides neither support for these assertions nor an adequate explanation as to what may have been missed. A defendant's conclusory allegations of ineffective assistance of counsel do not establish that his counsel's representation was objectively unreasonable.[21] And contrary to Adkins's contentions, the record demonstrates that Woloshin met with Adkins regularly pre-trial, engaged in multiple discussions of the evidence, and reviewed numerous potential suppression arguments.[22] Then, as now, Adkins was fixated on the idea that if he could somehow convince the Court that his compatriot, Darnell Martin, was illegally stopped, then any information obtained from Martin's stop would have to be excluded from the Dora Moors Lane search warrant. In turn, Atkins suggests, the evidence surrounding Adkins when the police executed that warrant would have to be suppressed.[23]

---

[20]     Def.'s Rule 61 Mot., at 3-4.

[21]     *Dawson*, 673 A.2d at 1196.

[22]     Def. Counsel's Aff., at ¶¶ 7-9, 12.

[23]     Def.'s Rule 61 Mot., at 3-4; Def.'s Amend. to Rule 61 Mot., at 1.

(14) The decision whether or not to include any particular legal argument in a motion to suppress is a strategic decision and a matter of professional judgment. Such a decision is not deficient representation if it is informed and reasonable.[24] Further, a defendant cannot demonstrate prejudice by defense counsel's failure to press a particular suppression claim if that argument were likely to fail.[25]

(15) Woloshin did file a suppression motion attacking the Dora Moors Lane search warrant.[26] But after giving careful consideration to the illegal-codefedant-traffic-stop argument Atkins wanted to make, she choose not include it. Woloshin recognized the several weaknesses in Atkins' preferred argument: (a) he lacked standing to challenge Martin's traffic stop; (b) Martin, who did have standing, lost his own suppression hearing; and, (c) even without the Martin-stop averment, the search warrant for 712 Dora Moors Lane was supported by probable cause.[27] Atkins has not shown that Woloshin's professional decision to forgo this argument in her suppression motion was unreasonable;[28] nor can he show prejudice—any

---

[24] *See Pennewell v. State*, 2005 WL 578444, at *1 (Del. Jan. 26, 2005).

[25] *See Poteat v. State*, 2007 WL 2309983, at *1 (Del. Aug. 14, 2007); *Bratcher v. State*, 2008 WL 2475741, at *1 (Del. June 20, 2008).

[26] Def. Counsel's Aff., at ¶13; *id.*, Ex. E.

[27] Def. Counsel's Aff., at ¶ 10.

[28] *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014) ("If an attorney makes a strategic choice 'after thorough investigation of law and facts relevant to plausible options,' that decision is 'virtually unchallengeable'…").

suppression argument by Atkins related to Martin's traffic stop was going to fail. Atkins is simply wrong in his understanding of applicable Fourth Amendment law.

(16)   To invoke the Fourth Amendment's, the Delaware Constitution's, or any applicable statute-based exclusionary rule, a defendant must demonstrate that his *own* rights were violated by the challenged search or seizure.[29]   These rights are violated only if "the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment [or any state constitutional or statutory provision] was designed to protect."[30]  A criminal defendant's rights aren't violated by the introduction of evidence obtained in violation of some third party's rights.[31] No, the protected rights are "personal."[32]  So the proponent of a motion to suppress bears the burden of proving not only that a contested search or seizure was illegal, but also that he had a legitimate expectation of privacy in the place searched or the item or person seized.[33]  Here Adkins had no such expectation during the traffic stop of Darnell Martin; Woloshin was correct on this.  She was likewise reasonable in her

---

[29]   *See Rakas v. Illinois,* 439 U.S. 128, 132-34 (1978); *Hanna v. State,* 591 A.2d 158, 162-63 (Del. 1991).

[30]   *Rakas,* 439 U.S. at 140.

[31]   *Id.* at 134.

[32]   *Id.* at 139.

[33]   *Rawlings v. Kentucky,* 448 U.S. 98, 104 (1980); *Washington v. State,* 1994 WL 716044, at *2 (Del. Dec. 20, 1994) ("A defendant bears the burden of proof of showing that he has standing to contest an unlawful search").

belief that the Dora Moors Lane search warrant was sufficient even without the evidence from Martin's traffic stop.[34] And the State's reliance on the evidence from that stop and the Dora Moors Lane search warrant can hardly be viewed as "misconduct" or a "*Brady* violation."

(17) Adkins' second argument—that Woloshin coerced him into accepting a plea agreement—is also unsupported by the record. During Adkins' plea colloquy, Woloshin represented that she spent a considerable amount of time with him during her representation, thoroughly reviewed the evidence in his cases, discussed the charges and potential penalties with Adkins, was prepared to move forward with his suppression hearing, and assured that Adkins understood the consequences of accepting the State's plea offer.[35]

(18) Adkins, in a detailed plea colloquy, confirmed that: (a) he understood the charges to which he was pleading guilty; (b) he had committed those crimes; (c) he was waiving all trial rights; (d) he understood the abandonment of any suppression arguments; (d) he understood the sentencing provisions applicable in

---

[34]    *See State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013) (An affidavit in support of a search warrant must, within the four corners of the affidavit, set forth facts adequate for a judicial officer to form a reasonable belief that an offense has been committed and the property to be seized will be found in a particular place); *see also Sisson v. State*, 903 A.2d 288, 296 (Del. 2006) (A magistrate may find probable cause when, considering the totality of the circumstances, "there is a fair probability that . . . evidence of a crime will be found in a particular place.").

[35]    Def. Counsel's Aff., Ex. L (plea hearing transcript), at 7-8.

-10-

his case and his potential sentencing exposure; and (e) Woloshin had explained the plea forms, discussed with him the evidence in his case, and reviewed with him any possible defenses.[36]

(19) While pending sentencing, Adkins sent his own letter to the Court disavowing certain evidence and advocating a sentence less than that to which he had agreed.[37] The Court inquired about this letter and questioned whether Adkins was seeking to withdraw his plea.[38] After again consulting with Woloshin, Adkins decided to move forward with sentencing.[39]

(20) Put simply, there is nothing to suggest duress or coercion in Adkins' proceedings. A review of the guilty plea colloquy confirms that Adkins' decision to plead guilty was knowing, voluntary, and the product of an intelligent decision made with an adequate opportunity to discuss all aspects of his case with Woloshin.[40] There being no clear and convincing contrary evidence, Adkins is bound by his

---

[36]     *Id.* at 8-20.

[37]     Def. Counsel's Aff., Ex. O (Atkins's post-plea letter).

[38]     Def. Counsel's Aff., Ex. P (sentencing hearing), at 4-8.

[39]     *Id.* (confirming Woloshin and Atkins had discussed his letter prior to the sentencing hearing and noting their final in-court consultation).

[40]     *See* Def. Counsel's Aff., Ex. L (plea hearing transcript), at 7-20.

answers recorded on the guilty plea forms and given during his colloquies both when entering the plea and when questioned about whether he sought to withdraw it.[41]

(21)   There is no such clear and convincing contrary evidence.  Rather, the record of the court proceedings is amply supported by that now developed on postconviction.  Contrary to Adkins's contentions, the evidence demonstrates that Woloshin fully investigated, considered, and employed reasonable defense options—including "proper" suppression arguments.  Woloshin met with Adkins regularly pre-trial, engaged him in multiple discussions of the evidence, and reviewed with him numerous potential defenses.  Woloshin thoroughly explained and even visually charted out Adkins' sentencing exposure.[42]  And, while preparing for the scheduled suppression hearing and potential trial, Woloshin also met her concomitant obligation to negotiate a plea that, while not wholly to Adkins' liking, resulted in a very favorable joint sentencing recommendation.[43]

(22)   "A criminal defense attorney must provide truthful information and informed legal advice; not just mouth what her client may want to hear.  Doing so is

---

[41]   See *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997); *Smith v. State*, 1996 WL 21050 (Del. Jan. 5, 1996).

[42]   Def. Counsel's Aff., Ex. J (Woloshin Ltr. to Atkins, Oct. 12, 2017).

[43]   See *Missouri v. Frye*, 566 U.S. 134, 143 (2012) ("The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages.").

required; not objectively unreasonable. It is instead precisely the professional behavior expected of Delaware counsel."[44] On this basis alone—*i.e.*, failure to show that Woloshin's performance was in any way deficient—Adkins' claims seeking vacatur of his guilty plea must be denied.[45]

(23) Adkins' plea colloquy evidences that his decision to enter a plea of guilt was knowing, voluntary, and the product of an intelligent decision made with Woloshin's reasonable professional advice and guidance.[46] There is simply no evidence of substandard representation or "coercion" here. And so, Adkins' claim of ineffective assistance must fail.

(24) Adkins has not met his burden of demonstrating that Woloshin's representation fell below an objective standard of reasonableness or that, but for counsel's errors, he would not have pleaded guilty and instead proceeded to trial. Accordingly, Adkins' Motion for Postconviction Relief must be **DENIED.**

---

[44] *State v. Dillard*, 2019 WL 118437, at *5 (Del. Super. Ct. Jan. 4, 2019) (internal citation omitted).

[45] *Strickland*, 466 U.S. at 687 ("This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."); *State v. McGlotten*, 2011 WL 987534, at *4 (Del. Super. Ct. Mar. 21, 2011) ("To restate the requirements of *Strickland*, a defendant must establish two things, not just one: that trial counsel's performance was deficient **and** that but for that deficiency, the outcome of the proceedings would have been different. If a defendant cannot establish both prongs, then the ineffective assistance of counsel claim fails.") (emphasis in original).

[46] Def. Counsel's Aff., Ex. L (plea hearing transcript).

-13-

**SO ORDERED** this 16th day of July, 2019.

**Paul R. Wallace, Judge**

Original to Prothonotary

cc: Timothy G. Maguire, Deputy Attorney General
Natalie S. Woloshin, Esquire
Timothy J. Adkins, *pro se*