# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| | ) | Def. I.D. # 2008012702 |
| v. | ) | |
| | ) | |
| | ) | |
| MARLON THOMAS, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: June 17, 2024
Decided: June 28, 2024

*Upon Defendant's Objection to Withdrawal of Postconviction Counsel,
Request for Appointment of New Postconviction Counsel, Request for Evidentiary
Hearing, and Motion for Postconviction Relief (R-1)*

**DENIED**

## MEMORANDUM OPINION AND ORDER

Nichole D. Gannett, Esquire and Kathryn Garrison, Esquire, Deputy Attorneys General, Department of Justice, 13 The Circle, Georgetown, DE 19947; Attorneys for State of Delaware.

Patrick J. Collins, Esquire, Collins Price & Warner, 8 East 13th Street, Wilmington, DE 19801; Postconviction Counsel for Defendant.

**KARSNITZ, R. J.**

**Procedural Background**

On October 12, 2021, after a bench trial before me, Marlon Thomas ("Petitioner" or "Mr. Thomas") was convicted of Second Degree Rape, a Class B felony, and Third Degree Unlawful Sexual Contact, a Class A misdemeanor. On December 10, 2021, I sentenced Petitioner to 55 years at Level V, suspended after 25 years for decreasing levels of supervision. Petitioner appealed directly to the Delaware Supreme Court, which affirmed his conviction on March 8, 2023.

On June 5, 2023, Petitioner filed a *pro se* Petition for Postconviction Relief with me under Delaware Superior Court Criminal Rule 61 (the "Petition"). In the Petition, he makes certain assertions about the ineffective assistance of counsel with respect to his representation by Zachary George, Esquire ("Trial Counsel") and Santino Ceccotti, Esquire ("Appellate Counsel"). In the Petition, he requested that I appoint postconviction counsel ("Postconviction Counsel") to represent him[1] and that I hold an evidentiary hearing[2] on the claims he presented in his Petition.

On June 14, 2023, I ordered the appointment of Postconviction Counsel. On December 7, 2023, Patrick J. Collins, Esquire was appointed as Postconviction Counsel. On January 23, 2024, Postconviction Counsel requested that the record be expanded to include affidavits from both Trial Counsel and Appellate Counsel[3] and

---

[1] Super. Ct. Crim. R. 61(e)(2).
[2] Super. Ct. Crim. R. 61(h).
[3] Super. Ct. Crim. R. 61(g)(2).

that both the Trial Counsel Affidavit and the Appellate Counsel Affidavit be filed before the State's Answer and Petitioner's Reply. The Trial Counsel Affidavit was filed on April 22, 2024 and the Appellate Counsel Affidavit was filed on April 19, 2024.

On February 29, 2024, I received a letter from Postconviction Counsel stating that, having found none of Petitioner's claims meritorious, he had filed a Motion to Withdraw as Postconviction Counsel on that same date.[4] Petitioner's Response to the Motion to Withdraw was due by March 29, 2024 (30 days).[5] Petitioner filed his Response on June 17, 2024, in which he objected to Mr. Collins' withdrawal and requested the appointment of another postconviction counsel to represent him. I address that objection and request below.

On February 1, 2024, I entered a further Amended Scheduling Order for the filing of an Amended Rule 61 Petition by Postconviction Counsel by March 7, 2024, the State's Response by May 8, 2024, and Petitioner's Reply, if any, by May 23, 2024. Since Postconviction Counsel has withdrawn, there will be no Amended Petition. I will rely on your *pro se* June 5, 2023 Petition. The State filed its Answer on April 16, 2024. Petitioner has not timely filed a Reply.

---

[4] Super. Ct. Crim. R. 61(e)(7).
[5] *Id.*

This is my decision on your Objection to the Withdrawal of Postconviction Counsel, your request for the Appointment of New Postconviction Counsel, your Request for Evidentiary Hearing, and your Petition for Postconviction Relief.

**Objection to Withdrawal of Postconviction Counsel**

On February 29, 2024, I received a letter from Postconviction Counsel stating that, having found Petitioner's claims to be so lacking in merit that he could not advocate them, he had filed a Motion to Withdraw as Postconviction Counsel on that same date.[6] Postconviction Counsel submitted a Memorandum of Law with the Motion, together with a voluminous Appendix, which laid out the facts and procedural posture of the case in considerable detail. The Memorandum then laid out in great detail the reasons why Postconviction Counsel could not ethically advocate Petitioner's four claims. I need not repeat that analysis here; it is essentially the same analysis I give later in this opinion for denying the Petition. Suffice it to say that some of Petitioner's claims are simply untrue and none of them are supported by Delaware law.

By email dated April 11, 2024, the Office of Conflicts Counsel advised that it would not be reassigning the case to another postconviction counsel.

---

[6] Super. Ct. Crim. R. 61(e)(7)(i).

Petitioner's Response to the Motion to Withdraw was due by March 29, 2024 (30 days).[7] Petitioner filed his tardy Response on June 17, 2024, in which he objects to Mr. Collins' withdrawal. Petitioner argues that Postconviction Counsel did not provide a factual and legal basis for withdrawal.

The applicable legal standard is that I must be satisfied that Postconviction Counsel made a conscientious examination of the record and the law for potentially meritorious claims, and that I have an independent duty to review the record and determine whether the Petition is devoid of any arguable claims.[8] I agree, and I have done so. I conclude that Postconviction Counsel conducted himself professionally, ethically, and honorably and that he correctly found no meritorious claims.

Petitioner then presents an illogical argument. Even though there is no constitutional right to a lawyer in a Rule 61 proceeding, he attacks Postconviction Counsel in his Reply under the Sixth Amendment for ineffective assistance of counsel under *Strickland*, just as he had attacked Trial Counsel and Appellate Counsel in the Petition. Yet he then argues that Postconviction Counsel's withdrawal would prejudice his rights to adequate representation under the Sixth Amendment. The question must be asked: why does Petitioner want to retain the services of a lawyer he considers to be ineffective?

---

[7] Super. Ct. Crim. R. 61e)(7).
[8] *State v. Harris*, 2020 WL 4284407 (Del. Super. July 24, 2020).

I understand and respect the conundrum in which Postconviction Counsel's ethical constraints place him. I will not deny his withdrawal and, to the extent I have not already done so, I grant his Motion for Withdrawal.

I remind Postconviction Counsel of his continuing duties under Rule 61(e)(7)(ii). Specifically, Postconviction Counsel must (A) notify Petitioner in writing of this decision, and (B) advise Petitioner of his right to appeal *pro se*, the rules for filing a timely notice of appeal, and that it is Petitioner's burden to file a notice of appeal if desired.

Petitioner's Objection to Withdrawal of Postconviction Counsel is **DENIED.**

## Request for Appointment of New Postconviction Counsel

In his Reply to Postconviction Counsel's Motion to Withdraw, Petitioner also asks, in the alternative, for the appointment of new postconviction counsel. But Petitioner has had his bite at the apple. Representation by counsel in a Rule 61 proceeding is not a constitutional right. It is afforded by Rule 61 itself. And Rule 61 provides no mechanism by which Petitioner may go shopping for a Rule 61 lawyer until he finds one that he likes. Having attacked his duly appointed postconviction counsel, he is now free to proceed *pro se*.

Petitioner's request for Appointment of New Postconviction Counsel is **DENIED**.

**Evidentiary Hearing**

After considering the expanded record including the Petition, the Trial Counsel Affidavit, the Appellate Counsel Affidavit, the State's Answer, and the record of prior proceedings in the case, I have the discretion to determine whether an evidentiary hearing is desirable.[9] If it appears to me that that an evidentiary hearing is not desirable, I may summarily dispose of the case.[10]

It appears to me that an evidentiary hearing in this case is neither necessary nor desirable. All the parties' arguments are fully set forth in the papers, and I opine on the merits of them, below.

Your request for an Evidentiary Hearing is **DENIED.**

**Petition for Postconviction Relief**

**The Four Grounds for Postconviction Relief**

In his Petition, Petitioner asserts four grounds for postconviction relief, all rooted in claims of ineffective assistance of counsel, which I summarize as follows:

- Mr. Thomas received ineffective assistance of counsel because Trial Counsel failed to thoroughly investigate the propriety of Petitioner's allegations regarding lack of DNA evidence;
- Mr. Thomas received ineffective assistance of counsel because Trial Counsel failed to advise Petitioner regarding his waiver of the right to testify in his own defense;

---

[9] Super. Ct. Crim. R. 61(h)(1).
[10] Super. Ct. Crim. R. 61(h)(3).

- Mr. Thomas received ineffective assistance of counsel because Trial Counsel failed to properly raise judicial notice of prior bad acts of the arresting police officers; and,
- Mr. Thomas received ineffective assistance of counsel because Appellate Counsel failed to raise critical issues on direct appeal.

**Trial Counsel Affidavit**

Mr. George filed his Trial Counsel Affidavit on April 22, 2024. With respect to claim1, he refers to the DNA comparison test conducted by the Delaware Division of Forensic Science dated December 2, 2020, which indicates that Petitioner's DNA was identified on the victim's breast. This test was part of the State's case, and there were no other DNA tests, exculpatory or otherwise.

With respect to claim 2, Trial Counsel states that he advised Petitioner of his right to testify (or not), and Petitioner knowingly, intelligently, and voluntarily elected not to testify.

With respect to claim 3, Trial Counsel states that, although a disciplinary record for a police officer was submitted to me *in camera* for review, that officer did not testify at trial, making the discipline issue irrelevant.

**Appellate Counsel Affidavit**

Mr. Ceccotti filed his Appellate Counsel Affidavit on April 19, 2024. With respect to claim 4, he agrees with Petitioner that on direct appeal to the Delaware

Supreme Court he did not raise the issues of (1) sufficiency of the evidence to sustain a conviction, (2) prior bad acts of the police officer, (3) the absence of incriminating DNA from the victim's body, and (4) the inference from the medical examination that the victim had been sexually active on or before the alleged incident with Petitioner. Although there is no further explanation of these omissions, it is implicit that they were conscious and deliberate.

**Procedural Bars**

I first address the four procedural bars of Rule 61.[11] If a procedural bar exists, as a general rule I will not address the merits of the postconviction claim.[12] A Rule 61 Motion can be barred for time limitations, successive motions, failure to raise claims below, or former adjudication.[13]

First, a motion for postconviction relief exceeds time limitations if it is filed more than one year after the conviction becomes final.[14] In this case, Petitioner's conviction became final for purposes of Rule 61 when the Delaware Supreme Court issued a mandate or order finally determining the case on direct review; i.e., March

---

[11] *Ayers v. State*, 802 A.2d 278, 281 (Del.2002) (citing *Younger v. State,* 580 A.2d 552, 554 (Del. 1990).

[12] *Bradley v. State*, 135 A.3d 748 (Del 2016); *State v. Page*, 2009 WL 1141738, at*13 (Del. Super. April 28, 2009).

[13] Super. Ct. Crim. R. 61(i).

[14] Super. Ct. Crim. R. 61(i)(1).

8, 2023.[15]  Petitioner filed the *pro se* Motion on June 5, 2023, well within the one-year period.  Therefore, consideration of the Petition is not barred by the one-year limitation.

Second, second or subsequent motions for postconviction relief are not permitted unless certain conditions are satisfied.[16]   Since this is Petitioner's first motion for postconviction relief, consideration of the Motion is not barred by this provision.

Third, grounds for relief which could have been but were not "not asserted in the proceedings leading to the judgment of conviction"[17] or on direct appeal are procedurally barred. The procedural bar also applies "even when ineffective assistance of counsel is asserted, unless the defendant successfully demonstrates that counsel was in fact ineffective and that ineffectiveness prejudiced his rights."[18]  It is well-settled Delaware law that, as collateral claims, ineffective assistance of counsel claims are properly raised for the first time in postconviction proceedings.[19]  Petitioner may well have couched his four *pro se*

---

[15] Super. Ct. Crim. R. 61(m)(2).
[16] Super. Ct. Crim. R. 61(i)(2).
[17] Super. Ct. Crim. R. 61(i)(3).
[18] *Wilson v. State*, 900 A.2d 102 (Table), 2006 WL 1291369, at *2 (Del. May 9, 2006) (citing *Gattis v. State*, 697 A.2d 1174 (Del. 1997)).
[19] *State v. Schofield*, 2019 WL 103862, at *2 (Del. Super. January 3, 2019); *Thelemarque v. State*, 2016 WL 556631, at *3 (Del. Feb. 11, 2016) ("[T]his Court will not review claims of ineffective assistance of counsel for the first time on direct appeal."); *Watson v. State*, 2013 WL 5745708, at *2 (Del. Oct. 21, 2013) ("It is well-settled that this Court will not consider a claim of ineffective assistance that is raised for the first time in a direct appeal.").

claims as ineffective assistance of counsel claims in order to avoid Rule 6l(i)(3)'s procedural bar. This gives rise to a scenario such as the one recently faced by this Court where it observed:

> [C]onstantly in this case, ineffective assistance of counsel is alleged as grounds to avoid a Rule 61(i)(3) bar, thus resulting in the Court having to consider the merits to determine if the ineffective counsel excuse is real. In other words, the mere allegation of ineffective counsel is not sufficient. It must be proven. So, because of ineffective assistance of counsel allegations, the merits of that allegation must be addressed.[20]

I will nonetheless address all four ineffective assistance of counsel claims under the dual standard of *Strickland v. Washington*[21] and *Albury v. State,* [22] below.

Fourth, grounds for relief formerly adjudicated in the case, including "proceedings leading to the judgment of conviction, in an appeal, in a post-conviction proceeding, or in a federal *habeas corpus* hearing" are barred.[23] Again, Petitioner may have couched some of his claims as ineffective assistance of counsel claims in order to avoid this procedural bar, but I will nonetheless address them substantively.

Finally, none of these procedural bars apply to a claim that pleads with particularity (1) that new evidence exists that creates a strong inference that Petitioner

---

[20] *State v. Cooke*, 2022 WL l7817903 at *8 (Del. Super. Dec. 15, 2022).
[21] 466 U.S. 668 (1984).
[22] 551 A.2d 53 (Del. 1988), which applied *Strickland* in Delaware.
[23] Super. Ct. Crim. R. 61(i)(4).

is actually innocent in fact, or (2) a new, retroactive rule of constitutional law applies to Petitioner's case.[24] Neither of these exceptions apply here.

**Legal Standard**

All four of Petitioner's claims are based on ineffective assistance of counsel. Such claims are assessed under the two-part standard established in *Strickland v. Washington,*[25] as applied in Delaware.[26] Under *Strickland*, Mr. Thomas must show that (1) Mr. George's and Mr. Ceccotti's representation "fell below an objective standard of reasonableness" (the "performance prong"); and (2) the "deficient performance prejudiced [his] defense." (the "prejudice prong").[27] In considering the performance prong, the United States Supreme Court was mindful that "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[28] *Strickland* requires an objective analysis, making every effort "to eliminate the distorting effects of hindsight" and to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[29] "[S]trategic choices about which lines of defense to

---

[24] Super. Ct. Crim. R. 61(i)(5); Super. Ct. Crim. R. 61(d)(2)(i) and (ii).
[25]  466 U.S. 668 (1984).
[26] *Albury v. State*, 551 A.2d 53 (Del. 1988).
[27]  *Strickland* at 687.
[28]  *Id.* at 690.
[29]  *Id.* at 689.

pursue are owed deference commensurate with the reasonableness of the professional judgments on which they are based."[30]

As to the performance prong, Mr. Thomas must demonstrate that Mr. George's failure to (1) thoroughly investigate the propriety of Petitioner's allegations regarding the lack of DNA, (2) advise Petitioner regarding his waiver of the right to testify in his own defense, and (3) properly raise judicial notice and bad prior acts of the arresting police officers, all as discussed more fully below, were unreasonable decisions. Similarly, Mr. Thomas must demonstrate that Mr. Ceccotti's failure to (4) raise critical issues on direct appeal, as discussed more fully below, was an unreasonable decision.

As to the prejudice prong, Mr. Thomas must demonstrate that there exists a reasonable probability that, but for Mr. George's and Mr. Ceccotti's errors, the outcome of the trial would have been different.[31] Even if the performance of Trial Counsel and Appellate Counsel was professionally unreasonable, it would not warrant setting aside the judgment of conviction if the error had no effect on the judgment.[32] A showing of prejudice "requires more than a showing of theoretical possibility that the outcome was affected."[33]

---

[30] *Id.* at 681.
[31] *Albury,* at 687; *Zebroski v. State,* 822 A.2d 1038, 1043 (Del. 2003); *Wright v. State,* 671 A.2d 1353, 1356 (Del. 1996).
[32] *Strickland,* at 691.
[33] *Frey v. Fulcomer,* 974 F.2d 348, 358 (3d Cir. 1992).

*Strickland* teaches that there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in a particular order, or even to address both prongs of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant because of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed.[34] In every case, the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.[35]

**Analysis**

**Claim 1**

In his first claim, Petitioner asserts that Trial Counsel did not adequately investigate Petitioner's allegations regarding the lack of DNA evidence. However, there *was* DNA evidence at trial: a test report that Petitioner's DNA matched DNA found on the victim's breast, with the odds of it belonging to anyone else of 1 in 7 trillion. Petitioner alludes to his DNA not being found in or on other parts of the victim's body, or to two other types of inconclusive DNA being found in the

---

[34] *Strickland,* at 697.
[35] *Id*. at 696.

condom, or to other DNA reports – but there was no such evidence. The DNA evidence was a part of the trial. The evidence established that Petitioner's DNA was on the victim' breast. Trial Counsel strategically used this evidence to argue that, although it might show the offense of Unlawful Sexual Contact in the Third Degree, it did not support the offense of Rape. Regardless of my verdict as the trier of fact, Trial Counsel's strategic decision was not objectively unreasonable, nor would it have changed the outcome of the trial. It does not amount to ineffective assistance of counsel.

I deny this claim.

**Claim 2**

In his second claim, Petitioner asserts that Trial Counsel did not adequately advise him regarding his waiver of his right to testify. Trial Counsel states under oath that he took a recess so that he could talk with Petitioner about whether or not to testify. According to Trial Counsel, they had that conversation, and Petitioner elected not to testify of his own free will. I am not going to second guess that decision now. I find Trial Counsel more credible on this claim. There was neither objectively unreasonable conduct by Trial Counsel, nor would the result of the trial have changed.

I deny this claim.

15

**Claim 3**

In his third claim, Petitioner asserts that Trial Counsel did not raise the prior bad acts of a police officer. In fact, Trial Counsel did so. He visited the Deputy Attorney General's office to review the police officer's record prior to trial. He further submitted the police officer's record to me for an *in camera* review. As it turned out, the police officer did not testify. Since this officer was not called as a witness and presented no evidence, there were no prior bad acts for Trial Counsel to raise. There was neither objectively unreasonable conduct by Trial Counsel, nor would the result of the trial have changed.

I deny this claim.

**Claim 4**

In his fourth claim, Petitioner asserts that Mr. Ceccotti failed to raise critical issues on direct appeal. Not surprisingly, these are virtually the same issues that Petitioner raised against Trial Counsel. Specifically, Petitioner argues that Appellate Counsel did not raise the issues of (1) sufficiency of the evidence to sustain a conviction, (2) prior bad acts of the police officer, (3) the absence of incriminating DNA from the victim's body, and (4) the inference from the medical examination that the victim had been sexually active on or before the alleged incident with Petitioner. I have already dealt with items (2), (3) and (4) above in my analysis of Petitioner's claims against Trial Counsel. If there was no ineffective assistance of

Trial Counsel in not raising these items at trial, it follows *a fortiori* that there was no ineffective assistance of Appellate Counsel in not raising these items on direct appeal. The issues which Petitioner argues should have been raised on appeal were not legitimate appellate issues.

With respect to item (1), I remain of the view that there was more than sufficient evidence at trial to sustain a conviction, and our Supreme Court agreed with me in upholding the conviction on direct appeal. In any event, sufficiency of the evidence to sustain a conviction is not an appropriate subject for collateral postconviction proceedings.

Under Delaware law, effective appellate counsel need not raise every issue appellant wants them to raise, or even every nonfrivolous issue.[36] Ineffective assistance of appellate counsel can only be established if appellate counsel failed to raise claims that are stronger than the ones he presented.[37] Appellate Counsel did so in this case. For example, he raised the issue of whether a trial judge in a bench trial must conduct a waiver colloquy with a defendant, which the Supreme Court carefully considered.

---

[36] *Ploof v. State*, 75 A.3d 811, 831 (Del. 2012).
[37] *Id*. at 832.

Appellate Counsel's decisions on which issues to argue on appeal were neither objectively unreasonable strategic decisions, nor in my view would arguing the issues raised by Petitioner have resulted in a different outcome on direct appeal.

I deny this claim.

## Conclusion

"'Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.'"[38] Despite our Supreme Court's prohibition on analyzing trial counsel's performance through the "distorting effects of hindsight,"[39] the arguments set forth in the Petition do just that. Mr. Thomas's claims are based on conclusory assumptions that, had Mr. George and Mr. Ceccotti acted differently, he would have somehow been able to overcome the substantial evidence the State produced at trial.

In light of the highly deferential approach I should take when reviewing such claims, and the strong presumption that counsel's conduct was

---

[38] *Wright,* 671 A.2d at 1356-57 (quoting *Strickland v. Washington,* 466 U.S. at 689).
[39] *Albury,* 551 A.2d at 59.

professionally reasonable, Mr. Thomas has not shown that Mr. George's or Mr. Ceccotti's representation fell below an objective standard of reasonableness or that there is a reasonable probability that, but for their errors, the result of the case would have been different.

"The defendant is entitled to a fair trial, not a perfect trial."[40] In my view, Mr. Thomas received a fair trial, and his dissatisfaction with the outcome neither changes that fact nor demonstrates that Mr. George or Mr. Ceccotti provided ineffective assistance of counsel under the standards set forth in *Strickland*.

For the reasons discussed above, and after a thorough review of the record in this case and the postconviction proceedings, the Petition is **DENIED.**

**IT IS SO ORDERED**.

/s/ Craig A. Karsnitz

cc:     Prothonotary
        Zachary George, Esquire
        Santino Ceccotti, Esquire

---

[40] *State v. Swan*, 2020 WL 7259626, at \*20 (Del. Super. Feb. 21, 2020), *aff'd,* 248 A.3d 839 (Del. 2021).