# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,     )
     )
   v.     )     **I.D.: 2209000664**
     )
JOHN McCURDY,     )
     )
   Defendant.     )

Submitted: January 5, 2026
Decided: January 22, 2026

## OPINION AND ORDER

*Upon Defendant's Motion for Post-Conviction Relief
and Motion to Vacate Conviction*

**DENIED**

*Beth Savitz, Esquire, Deputy Attorney General*, Office of the Attorney General, Wilmington, Delaware, Attorney for State of Delaware.

*Mr. John McCurdy*, 900 North East Road, North East, MD 21901, pro-se Defendant.

**Jones, J.**

On November 7, 2022, a New Castle County grand jury indicted McCurdy and Marisol Karg for Drug Dealing (marijuana), Drug Possession (marijuana), and Conspiracy Second Degree.[1] McCurdy filed a Motion to Suppress the drug evidence found pursuant to the search warrant of his storage unit and apartment.[2] The Superior Court denied the motion.[3] A motion to sever the cases of McCurdy and Karg was granted.[4] A two day jury trial for the charges against McCurdy occurred on February 20 and 21, 2024. The issue at trial was who was the owner of the drugs. Karg testified on behalf of McCurdy and claimed ownership of the drugs. The jury found McCurdy guilty on all counts.[5] McCurdy received a probationary sentence. He filed a direct appeal to the Delaware Supreme Court which resulted in an affirmance of his conviction.[6]

On June 17, 2025 McCurdy filed a pro-se Motion for Postconviction Relief asserting three claims: (1) trial counsel was ineffective for failing to adequately prepare for trial; lead counsel turned the case over to a more junior attorney giving her little or no oversight; failed to identify or subpoena a key witness who took photographs of Defendant's storage shed; and failed to compel the state to turn over exculpatory materials: (2) Defendant's right to confront witnesses was violated when

---

[1] D.I. 2.
[2] D.I. 12.
[3] D.I. 19.
[4] D.I. 22.
[5] D.I. 37.
[6] *McCurdy v. State of Delaware*, 2025 WL 751352 (Del. Supr., 2025).

the person who took photos of his storage shed was never identified and therefore not subject to cross examination; and (3) there was a Brady violation in that an email from the codefendant along with a voice mail left by the codefendant in which she admitted to the ownership of the marijuana found was not disclosed before or during trial.[7] Defendant has also filed a Motion for Appointment of counsel.

On October 22, 2025 this Court issued a decision and order denying McCurdy's Motion for Post Conviction Relief. This decision was mailed to McCurdy. On or about November 13, 2025 the postal service returned the decision that had been mailed to McCurdy indicating that the address was vacant. The decision was remailed to McCurdy on December 1, 2025.

Meanwhile on November 24, 2025 McCurdy filed a further motion to vacate conviction for violation of Brady and also alleging that the search warrants issued in the case were invalid.

It is clear to the Court that McCurdy did not receive this Court's original October 22, 2025 timely. The Court is therefor vacating its October 22, 2025 decision and reissuing the instant decision which addresses the points raised in the original post-conviction motion and the filing on November 22, 2025.

---

[7] It was not crystal clear in Defendant's Motion Papers as to what photographs he was referring to and what voicemail. Defendant, at a hearing called by the Court, confirmed that the photographs being complained about were from the tipster and the voicemail was from the Co-Defendant to the prosecutor.

## FACTS

In August 2022, Officer Drew Hunt ("Officer Hunt") of the New Castle County Police received detailed information from a Crime Stoppers Tip advising that "John McCurdy" of 162 Greenbridge Drive, 8 Apt, E3, Newark, Delaware 19711 was selling marijuana and prescription drugs from his residence.[8] The tipster also advised that McCurdy was storing marijuana in unit #1526 at Storage Rentals of America located at 20990 Stafford Way, Newark, Delaware 19711.[9] The tipster gave police detailed information about McCurdy including his physical description, address, telephone number, and the description and license plate number of the car he drove. [10]

The unknown tipster also gave police two photos from what was purported to be the storage unit in question. The first photo is purported to be an image of McCurdy inside of a storage unit.[11] The second photo does show a container of two large vacuum sealed bags.[12]

The police corroborated the information given by the tipster. Through various CJIS/DELJIS inquiries, police positively identified "John McCurdy" as McCurdy. Officer Hunt conducted a property check and located the identified vehicle, with the

---

[8] Affidavit of Probable Cause.
[9] *Id.*
[10] *See*, page 48-49 Appendix of Appellant's Supreme Court BRHJ.
[11] *Id.*
[12] *Id.*

reported license plate number, parked in front of 162 Greenbridge Drive, 8 Apt, E3.[13] A CJIS inquiry showed that the vehicle was registered to McCurdy.[14]

Officer Hunt responded to Storage Rentals of America located at 2090 Stafford Way, Newark, Delaware 19711.[15] Staff there confirmed that McCurdy rented storage unit number 1526, as reported by the tipster.[16] Storage Rentals of America staff granted officers access to the secured building where unit 1526 was located so that they could conduct an "open air K9 sniff" of the units.[17]

Officer Smack of the K9 Unit and his canine partner Thor responded to the storage facility to conduct the open-air sniff from outside the unit.[18] Thor alerted for the presence of "a controlled dangerous substance" outside of unit 1526.[19] This prompted police to seek, and subsequently obtain, a search warrant for that storage unit.[20] The affidavit of probable cause to obtain the search warrant included the above facts.[21]

From within the unit, police seized three bags, totally 1,006.16 grams, of a green leafy plant-like substance that field tested positivity for marijuana.[22] They also

---

[13] Id.
[14] Id.
[15] Id.
[16] Id.
[17] Id.
[18] Id.
[19] Id.
[20] Id.
[21] Id.
[22] DI. 12.

seized cash and money orders totaling $7,420.00.[23]  The next day, police obtained a search warrant for 162 Greenbridge Drive, Apt E3 to search McCurdy's apartment.[24]

In response to McCurdy's ineffective assistance of counsel claims affidavit of Eugene Maurer and Molly Dugan have been filed.[25]  Those affidavits provide as follows:

### AFFIDAVIT OF EUGENE J. MAURER, JR.

I, Eugene J. Maurer, Jr., having been duly sworn, do hereby state as follows:

1. I am a criminal defense attorney practicing in the State of Delaware and a licensed member of the Delaware Bar since September of 1975.

2. I, together with my associate and co-counsel, Molly R. Dugan, were retained to represent Mr. McCurdy in the above-captioned matter in September of 2022.

3. McCurdy was indicted in November of 2022 on charges of Drug Dealing, Possession of Marijuana (Felony), and Conspiracy in the Second Degree, along with co-defendant Marisol Karg.

4. I have reviewed the affidavit of associate counsel, Molly R. Dugan, to whom this case was primarily assigned. I hereby incorporate all of Ms. Dugan's assertions as to the steps she took individually and the steps we took jointly in representing Mr. McCurdy.

5. The evidence against Mr. McCurdy was extremely strong, consisting primarily of drugs and cash seized from a storage unit in McCurdy's name. Additionally, marijuana was found in the defendant's residence. There is a co-defendant in this case by the name of Marisol Karg.

6. In response to McCurdy's Motion for Post-Conviction Relief, counsel would assert the following with regard to ¶ 2.

    a. Counsel consulted regularly with co-counsel Dugan in preparation for trial. There were no witnesses to investigate except for Ms. Karg and, as noted by Ms. Dugan in her affidavit,

---

[23] *Id.*
[24] *Id.*
[25] D.I. 67, 68.

6

that witness's potential testimony was explored in detail and in fact Karg did appear and testify at the trial in a fashion favorable to McCurdy;

b.     Counsel understood all of the details of the defendant's case and at no time pressured the defendant to accept a plea deal. Counsel admits that he presented the defendant with a proposed Plea Agreement and recommended strongly that the defendant accept it given the strength of the State's evidence, the likelihood that the defendant would be convicted, and the improbability of the story that the defendant provided to counsel;

c.     Counsel at no time removed himself from the case but it was decided that the case would be better tried by Ms. Dugan for reasons that can be articulated in more detail when there is a hearing on this matter. As noted above, counsel continued to discuss the case with Ms. Dugan and also discussed with her on many occasions trial strategy;

d.     Acting on the defendant's behalf, Ms. Dugan and counsel prepared and filed a Motion to Suppress Evidence. The claim that there was little support or oversight is inaccurate;

e.     It is true that Ms. Dugan is and was less experienced than counsel in areas of criminal defense. However, counsel felt that the case would be better handled at trial by Ms. Dugan in that the case was not unduly complicated. Counsel felt that she would better be able to make an effective presentation in front of a jury. However, as noted above, counsel stayed involved in the process throughout and supervised Ms. Dugan's activities and remained in regular contact with her. Counsel and Ms. Dugan regularly discussed trial strategy.

f.     There was no issue with respect to the photographs that were used by the State in evidence and there was no reason to subpoena the person who took the photographs. Counsel is unclear as to what significance the defendant is attributing to the photographs;

g.     Counsel never accused the defendant of lying but rather pointed out to him the improbabilities of the story that he provided to the defense with respect to the case;

h.     There is no understanding by counsel as to how the defendant's right to confront witnesses was denied. As noted above, counsel has no idea what the defendant means when he talks about the crucial nature of the identity of the individual who

took the photographs in the case. Again, there is no *Crawford* issue in this matter;

  i. The co-defendant in this case did admit to the commission of the crime and did in fact testify in front of the jury;

  j. The issue regarding the person who took the photographs is discussed above. The photographs spoke for themselves. The witness who took the photographs was not in a position to testify one way or the other as to whether or not the marijuana depicted in the photographs was possessed by the defendant and the photographs were properly authenticated;

  k. Counsel reviewed the work of Ms. Dugan, both with respect to the suppression issues and also with respect to the trial. Counsel was at all times satisfied that Ms. Dugan was more than capable of handling this case and she, in fact, provided effective representation on behalf of Mr. McCurdy. The fact that she had not been a member of the Bar for much longer than one year did not in any way prejudice the defendant given the excellent job which she did on his behalf at trial; and

  l. Ms. Dugan and counsel had tried several felony cases jointly prior to this one.

## AFFIDAVIT OF DEFENSE COUNSEL

I, Molly R. Dugan, having been duly sworn, do hereby state as follows:

1. I am a criminal defense attorney practicing in the State of Delaware and a licensed member of the Delaware Bar since January 2022.

2. In that capacity, Eugene J. Maurer, Jr. and I were retained to represent John McCurdy in the above-captioned matter in September 2022.

3. McCurdy was indicted in November 2022 on charges of Drug Dealing, Possession of Marijuana (Felony) and Conspiracy Second Degree, along with co-defendant Marisol Karg.

4. By way of background, an anonymous tip was submitted to the New Castle County Police Department ("NCCPD") in August 2022 which alleged McCurdy was a drug dealer and that he kept the drugs hidden in a storage unit as well as in his residence. The tipster provided corroborated information about McCurdy, including the make and model of his vehicle and the addresses of his residence and storage unit. The

anonymous tip also included two photos – one of which purported to be McCurdy standing inside of the unit and the second photo of a plastic storage bin seemingly containing a vacuum-sealed bag of marijuana. NCCPD subsequently conducted an open-air K9 sniff at McCurdy's storage unit facility. The K-9 indicated the presence of illegal drugs within McCurdy's storage unit. NCCPD obtained and executed a search warrant for the unit, during which they found approximately 1,000 grams of marijuana and $15,000 in cash and money orders. NCCPD also obtained a search warrant for the body of McCurdy. When officers arrived at McCurdy's residence to execute same, they met Marisol Karg, who was exiting the residence. NCCPD officers smelled a strong odor of marijuana emanating from Karg's person. Officers searched the bag that Karg was carrying and found an additional 1,161 grams of marijuana. During execution of a warrant to search McCurdy's residence, officers found another 44 grams of marijuana in his kitchen, as well as vacuum-sealed bags and other paraphernalia. Both Karg and McCurdy were charged with Drug Dealing, Possession of Marijuana and Conspiracy Second Degree.

5. McCurdy's arraignment in the Superior Court took place on December 9, 2022. On January 30, 2023, defense counsel sent McCurdy via letter a summary of all discovery materials. First Case Review occurred on February 21, 2023. At or about the time of the First Case Review, defense counsel communicated a Plea Offer to McCurdy that was extended by the State. The State offered for McCurdy to plead guilty to Drug Dealing Marijuana (Class D Felony) and Conspiracy Second Degree with a recommendation of probation. McCurdy declined the plea offer at that time. Shortly after, defense counsel sent McCurdy a letter asking him to consider accepting the State's plea offer given the evidence against him.

6. Defense counsel (to include Mr. Maurer) drafted and filed a Motion to Suppress Evidence on March 29, 2023. The Motion alleged that neither the anonymous tip submitted to NCCPD nor the K9 sniff established probable cause to search McCurdy's storage unit.

6. On July 28, 2023, a Suppression Hearing took place before Judge Danielle Brennan, at which time undersigned counsel represented McCurdy. The Court orally denied the Motion at the conclusion of the hearing.

7. The Final Case Review occurred on July 31, 2023, at which time McCurdy engaged in a plea rejection colloquy with the Court.

9

8. On August 2, 2023, undersigned counsel received multiple emails from McCurdy's co-defendant Ms. Karg, who stated that all of the marijuana found at McCurdy's storage unit and residence belonged to her. Following a discussion with Karg's defense attorney, counsel forwarded the emails to the State.

9. Given this late development, defense counsel (to include Mr. Maurer) filed a Motion to Sever Defendants on August 2, 2023 and a preemptive Motion to Withdraw as Counsel on August 25, 2023.

10. The case proceeded to trial on February 19, 2024 and lasted for two days. Prior to the start of trial, the Court granted the Motion to Sever Defendants given Karg's assertions to counsel. The State elected to have McCurdy tried first. Undersigned counsel, with the guidance of Mr. Maurer, represented McCurdy at trial. In addition to the aforementioned evidence, the State presented an expert in drug dealing who testified that the manner in which the marijuana was stored was indicative of drug dealing.[26] Counsel cross-examined the expert on these points as well as on his level of expertise. Counsel objected to numerous items of evidence, including body-worn camera footage and photos of items taken from McCurdy's residence. After the conclusion of the State's case-in-chief, Karg testified for the defense. Consistent with her emails to undersigned counsel several months prior to trial, Karg testified that the marijuana was hers and McCurdy had no knowledge of it. McCurdy was ultimately convicted on all charges.

11. On April 1, 2024, defense counsel submitted a Sentencing Memorandum to the Court which outlined McCurdy's background and requested that the Court sentence him to probation. Undersigned counsel represented McCurdy at sentencing on April 12, 2024, at which time the State requested Level IV/V time followed by probation. The Court sentenced McCurdy to probation and other conditions.

12. With respect to McCurdy's various claims of ineffective assistance of counsel, counsel responds as follows:

Subsection A – Ineffective Assistance:

Ground One: McCurdy fails to identify any specific evidence or witnesses that counsel neglected to investigate. Although undersigned counsel is not mentioned, both undersigned and Mr. Maurer spent hours over the course of the case reviewing the evidence and investigating any potential defenses. There were no eyewitnesses to illegal drug activity

---

[26] The State did not make mention of the anonymous tipster at trial, instead beginning at their execution of the warrant for McCurdy's storage unit.

that could have been identified except Karg, who was also charged with Drug Dealing and represented by other defense counsel.

Ground Two: Although undersigned counsel is not mentioned, counsel was with Mr. Maurer during most, if not all, meetings with McCurdy throughout the pendency of the case. At no time in counsel's recollection did Mr. Maurer fail to recall details of McCurdy's case. Even if he had, it did not render his performance deficient or prejudice McCurdy. As to the State's Plea Offer, undersigned and Mr. Maurer advised McCurdy both in person and in writing to strongly consider accepting it given the evidence against him. Regardless, McCurdy knowingly and voluntarily rejected the Plea Offer before the Court at the Final Case Review.

Ground Three: Counsel acknowledges having only been a member of the Delaware Bar for approximately one year prior to trial. It was not, however, counsel's first jury trial. Counsel represented defendants in several jury and non-jury trials in Superior Court and Family Court prior to McCurdy's February 2024 trial, including a two-week Attempted Murder trial in December 2023. McCurdy is correct to point out that counsel filed a Motion to Suppress on his behalf, as was stated above. Counsel also filed the Motion to Sever Defendants on the same date that she received the previously mentioned emails from Ms. Karg. Nonetheless, counsel had the full support and oversight of Mr. Maurer throughout the case, which included during trial and in the filing of all pre-trial Motions.

Ground Four: McCurdy fails to identify what key witness(es) counsel failed to identify or subpoena for trial. Counsel believes that McCurdy may be referring to the individual who submitted photos to NCCPD of McCurdy's storage unit. The photos were submitted anonymously, which counsel confirmed with the State. Therefore, it is counsel's understanding neither NCCPD nor the Attorney General's Office could identify (or subpoena) that individual.

Ground Five: Although undersigned counsel is not mentioned, McCurdy fails to assert when counsel would have accused McCurdy of lying and what "critical evidence" was of issue. Counsel does not recall herself or Mr. Maurer having accused McCurdy of lying about any aspect of the case. In addition, McCurdy fails to state what exculpatory materials that counsel failed to compel the State to turn over.

Subsection B – Denial of Right to Confront Witnesses:

Ground Six: See Ground Four above.

11

## STANDARD OF REVIEW

I first address the four procedural bars of Rule 61.[27] If a procedural bar exists, as a general rule I will not address the merits of the postconviction claim.[28] A Rule 61 Motion can be barred for time limitations, successive motions, failure to raise claims below, or former adjudication.[29]

First, a motion for postconviction relief exceeds time limitations if it is filed more than one year after the conviction becomes final.[30] The Supreme Court issued its mandate of Mc Curdy's direct appeal on March 25, 2025. His postconviction petition is timely.

Second, second or subsequent motions for postconviction relief are not permitted unless certain conditions are satisfied.[31] Since this is McCurdy's first petition for postconviction relief, consideration of the Motion is not barred by this provision.

Third, grounds for relief "not asserted in the proceedings leading to the judgment of conviction"[32] or on direct appeal are procedurally barred. This procedural bar also applies "even when ineffective assistance of counsel is asserted, unless the defendant successfully demonstrates that counsel was in fact ineffective and

---

[27] *Ayers v. State*, 802 A.2d 278, 281 (Del.2002) (citing *Younger v. State,* 580 A.2d 552, 554 (Del. 1990)).
[28] *Bradley v. State*, 135 A.3d 748 (Del. 2016); *State v. Page*, 2009 WL 1141738, at*13 (Del. Super. April 28, 2009), *aff'd* 994 A.2d 745 (Del. 2010).
[29] Super. Ct. Crim. R. 61(i).
[30] Super. Ct. Crim. R. 61(i)(1).
[31] Super. Ct. Crim. R. 61(i)(2).
[32] Super. Ct. Crim. R. 61(i)(3).

that ineffectiveness prejudiced his rights."[33] It is well-settled Delaware law that, as collateral claims, ineffective assistance of counsel claims are properly raised for the first time in postconviction proceedings.[34] Most of McCurdy's claims are grounded in ineffective assistance of counsel. Thus, those claims are not barred by this provision.

The ineffective assistance of counsel claims are assessed under the two-part standard established in *Strickland v. Washington,*[35] as applied in Delaware.[36] Under *Strickland*, McCurdy must show that (1) Trial Counsel's representation "fell below an objective standard of reasonableness" (the "performance prong"); and (2) the "deficient performance prejudiced [his] defense" (the "prejudice prong").[37] In considering the performance prong, the United States Supreme Court was mindful that "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[38] *Strickland* requires an objective analysis, making every effort "to eliminate the distorting effects of hindsight" and to "indulge a strong presumption that counsel's conduct falls within the wide range of

---

[33] *Wilson v. State*, 900 A.2d 102 (Table), 2006 WL 1291369, at *2 (Del. May 9, 2006) (citing *Gattis v. State*, 697 A.2d 1174 (Del. 1997)).

[34] *State v. Schofield*, 2019 WL 103862, at *2 (Del. Super. January 3, 2019); *Thelemarque v. State*, 2016 WL 556631, at *3 (Del. Feb. 11, 2016) ("[T]his Court will not review claims of ineffective assistance of counsel for the first time on direct appeal."); *Watson v. State*, 2013 WL 5745708, at *2 (Del. Oct. 21, 2013) ("It is well-settled that this Court will not consider a claim of ineffective assistance that is raised for the first time in a direct appeal.").

[35] 466 U.S. 668 (1984).

[36] *Albury v. State*, 551 A.2d 53 (Del. 1988).

[37] *Strickland*, 466 U.S. at 687.

[38] *Id*. at 690.

reasonable professional assistance."[39] "[S]trategic choices about which lines of defense to pursue are owed deference commensurate with the reasonableness of the professional judgments on which they are based."[40]

As to the performance prong, McCurdy must demonstrate that Trial Counsel's alleged failures were unreasonable decisions.

As to the prejudice prong, McCurdy must demonstrate that there exists a reasonable probability that, but for Trial Counsel's errors, the outcome of the trial would have been different.[41] Even if Trial Counsel's performance was professionally unreasonable, it would not warrant setting aside the judgment of conviction if the error had no effect on the judgment.[42] A showing of prejudice "requires more than a showing of theoretical possibility that the outcome was affected."[43]

*Strickland* teaches that there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in a particular order, or even to address both prongs of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant because of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack

---

[39] *Id.* at 689.
[40] *Id.* at 681.
[41] *Albury,* at 687; *Zebroski v. State,* 822 A.2d 1038, 1043 (Del. 2003); *Wright v. State,* 671 A.2d 1353, 1356 (Del. 1996).
[42] *Strickland,* at 691.
[43] *Frey v. Fulcomer,* 974 F.2d 348, 358 (3d Cir. 1992).

14

of sufficient prejudice, that course should be followed.[44]  In every case, the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.[45]

The Constitution does not require that the performance  of Trial and Appellate Counsel  be error  free  to satisfy  the effectiveness  standard.[46] The performance inquiry turns on whether counsel's assistance was reasonable under all the circumstances.[47] Evidence of isolated poor strategy, inexperience, or bad tactics does not necessarily establish ineffective assistance.[48]

## ANALYSIS

I turn first the claims of ineffective assistance of counsel.  The claims of ineffectiveness are as follows:

- Attorney Maurer failed to adequately prepare for trial and neglected key responsibilities related to investigating evidence and witnesses.
- He consistently forgot the details of Defendant's case and pressured the Defendant to take a plea deal that was not in the Defendant's best interest.
- Mr. Maurer later attempted to remove himself from the case after the Defendant declined the plea deal.
- Mr. Maurer left the case in the hands of a less experienced associate, Ms. Molly Dugan, who attempted to suppress

---

[44] *Strickland,* at 697.
[45] *Id*. at 696.
[46] *McMann v. Richardson,* 397 U.S. 759, 770-71 (1970).
[47] *Wong v. Belmontes,* 558 U.S. 15, 17 (2009); *Strickland,* 466 U.S. at 688.
[48]*Bellmore v. State,* 602 N.E. 2d 111, 123 (Ind. 1992) rehearing den. 1993.

- evidence and file motions late in the process, with little support or oversight
- Mr. Maurer failed to identify the subpoena the key witness involved in takin photographs used by the State as evidence.
- He also accused the Defendant of lying about critical evidence and failed to compel the State to turn over exculpatory materials.

Having reviewed the affidavits of counsel and the record I am satisfied that trial counsel adequately investigated the case and prepared for trial. The primary issue at trial was the owner of the drugs found in a storage unit rented by the defendant and in his house. Counsel presented the testimony of the codefendant who took responsibility for ownership of the drugs. That the jury decided the issue differently was not as a result of counsel's performance. I find no merit to the factual allegation that Mr. Maurer forgot the details of Defendant's case. As to the allegation that Maurer pressured the defendant to take a plea deal I find no merit to this allegation in light of Maurer's affidavit and even if I discounted Maurer's testimony on this point any failure on the part of Maurer resulted in no prejudice to McCurdy because he did not accept the plea.

I agree that Ms. Dugan was less experienced that Mr. Maurer. However, less experienced does not equate with ineffectiveness. A review of the record leads to a conclusion that Ms. Dugan mounted the defense that needed to be mounted. I have reviewed the suppression motion and the hearing and I conclude that it was more than adequate and covered the points and arguments that needed to be made.

McCurdy asserts the motion was filed late, which is not supported by the record. The motion was considered by the Court and ultimately affirmed by the Supreme Court on appeal. Again the fact that the Court denied the suppression motion does not mean that the motion was not well presented which it was.

Similarly, this Court's review of the entire trial record leads to a conclusion that Ms. Dugan mounted the defenses that needed to be made. There was no ineffectiveness in her trial presentation.

McCurdy claims that counsel failed to identify or subpoena a key witness who took the photos that were utilized to obtain the search warrant and as such his right under the confrontation clause were violated. The confrontation clause is only implicated where the testimonial statements are introduced against the defendant.[49] What McCurdy complaints about is that the photographs taken and used to support the affidavit of probable cause to search the storage unit were used against him at trial.[50] In fact the State attempted to enter the informant's photographs, the defendant objected and the Court sustained the objection.[51] The photographs taken by the informant were not admitted at trial.

In *Flowers v. State* the Delaware Supreme Court set forth the four contexts in which the issue of disclosing an informant's identity typically arises: (1) the informer

[49] *Smith v. Arizona*, 602 U.S. 779 (2024).
[50] What was admitted into evidence as photographs were the photos taken by law enforcement at the time of the execution of the warrant. Trial transcript 2/21/24 pages 46, 49.
[51] Trial transcript 9/22/24 pages 57-59 and 93-95.

is used merely to establish probably cause for a search; (2) the informer witnesses the criminal act; (3) the informer participated but is not a party to the illegal transaction and (4) the informer is an actual party to the illegal transaction. The Supreme Court has made it clear that under RULES OF EVIDENCE 509 the identify of an informant is protected in the first *Flowers* scenario.[52] The first *Flowers* scenario is exactly what occurred in the instant case. The informant was used merely to establish that the informant was not a participant in the criminal act nor did he witness it. The informant who took the photos was not required to be disclosed by the police. So, any failure, if any, to investigate the identity of the photographer would not have prejudiced the defendant because the State, under *Flowers,* would not have had to disclose the identity of the informant photographer. As such not only was there no ineffectiveness but there was no prejudice even if there was ineffectiveness.

Defendant next complains that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) in two ways. First, Defendant again points to the photographs taken by the confidential informant as the basis for the first *Brady* claim. What Defendant fails to appreciate is that these photos were made available to the Defendant and were referenced and viewed by the Court as part of the suppression hearing. The photographs were marked as exhibits at the suppression hearing.[53] There is no basis

---

[52] *Cooper v. State*, 2011 WL 6039613 (Del. 2011); *Burcher v. State*, 906 A.2d 798, 802-803 (Del. 2006).
[53] See Suppression Hearing transcript pages.

to argue that the state withheld any evidence related to the photographs used to establish probable cause. To the extent defendant is focused on the identity of the informant the State, as discussed above, was under no obligation to turn over the informant's identity.

Defendant next argues that the State failed to produce information related to the codefendant. According to the Defendant, the State failed to disclose an email and voicemail from the codefendant where she implicated herself as the owner and/or possessor of the drugs. The problem with this argument is that defense actually had the email in question and used it in its cross-examination of Officer Hunt. The defense also called Karg as a witness and she admitted to sending the email to Detective Hunt and that the email said that she, rather than McCurdy, was the owner of the marijuana and that she stored the drug in both the storage shed and McCurdy's apartment without his knowledge. The email was available to the defendant prior to trial and was in fact used by the defendant to support his theory of the case. On this record there is no *Brady* violation.[54]

Finally in his November 24, 2025 filing McCurdy maintains that the State violated its Brady obligations by not turning over information related to

---

[54] Defendant also references a voice mail without any other identifying information. On this basis alone Defendant's motion is still denied. Even if Karg left a voice mail message for the detective and the State failed to disclose that information there is no prejudice to the defendant. Even without the voice mail the Defendant was still able to have Karg testify that it was she, not McCurdy who owned or possessed the drug. The addition of a voice mail would not have changed the weight or the credibility of the Defendant's evidence.

19

communications between the State and the storage rental personnel.  McCurdy bases this claim on the closing statement of the State where McCurdy alleges that the state referenced communications with the personnel of the storage facility.  The facts do not demonstrate any Brady violation.  Any reference to any conversations with staff at the storage facility were contained in the police reports and Body Worn Camera footage that were provided with discovery.  There is no evidence, in fact it is denied, that the prosecutor in this case contacted personnel at the storage facility which may or may not have triggered a Brady violation.  In short there was no Brady violation regarding any communication between storage personnel and the State.

In his most recent motion McCurdy challenges the circumstances surrounding the warrants in this case.  McCurdy claims that there were significant irregularities in the issuance of the initial search warrant which should now afford him relief.

McCurdy filed a motion to suppress, which was denied, and did not raise these issues.  On his direct appeal in this case he did not raise these issues.  Therefore they are barred from consideration at this stage of the proceedings.[55]

Even if not barred the facts indicate that no relief is appropriate.  Detectives obtained a search warrant for 163 Greenbridge Road, Apartment E3. This search warrant was never executed because the police discovered that no building number 163 existed and the correct building was 162, Apartment E3.  A second warrant was

---

[55] Super. Ct. Crim Rule 61(i)(3).

obtained for 162, Apartment E3 and that warrant was executed on Defendant's residence. All of this was documented in the police reports that were produced to McCurdy. There was simply nothing inappropriate about the warrants in this case.

For the stated reasons, this Court's October 22, 2025 be and hereby is vacated. Defendant's request for Postconviction Relief is **DENIED**. As the Court has denied the request for relief, the Court also **DENIES** Defendant's request for the appointment of counsel. Defendant's Motion to Vacate Conviction for Violation of *Brady v. Maryland* is **DENIED.**

**IT IS SO ORDERED**.

*/s/ Francis J. Jones, Jr.*
Francis J. Jones, Jr., Judge

cc:  Original to the Prothonotary